## WILLARD H. ALEXANDER *et al.*

### *v.*

## THE NORTHWESTERN MASONIC AID ASSOCIATION.

*Filed at Ottawa November 15, 1888.*

1. LIFE INSURANCE—*payable to "devisees or heirs-at-law"—who may take—"heirs-at-law" defined.* Where a person takes a certificate of life insurance in a benevolent society, payable to his "devisees or heirs-at-law," if he executes a will bequeathing the fund to a person or persons therein named, such person or persons will be entitled to the same on his death; but if he dies intestate, without issue, the fund will go to his widow, if any, to the exclusion of his next of kin, or father, mother, and brothers and sisters.

2. The words "heirs-at-law," in a bequest of personal estate, or in a policy of life insurance, used to designate the beneficiaries, unexplained by the context, will be held to mean the persons appointed by law to succeed to the estate of the testator or assured in case of intestacy. This rule of construction will not be affected by the mere fact that other and independent provision has been made for some of the same beneficiaries.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on writ of error to the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

Messrs. CRATTY BROS. & ASHCRAFT, for the plaintiffs in error:

The intention of a party in making a contract is to be arrived at and enforced. He is to be understood by the court in the same sense in which he understood himself. 2 Parsons on Contracts, (5th ed.) 501, 515, note t; *Metcalf* v. *Taylor*, 36 Me. 28; *Navigation Co.* v. *Moore*, 2 Whart. 491; *People* v. *Phelps*, 78 Ill. 147.

A widow is not an heir of her deceased husband, even under the statute of Illinois, except where she may take by virtue of the statute. She can not take as heir under or by virtue of a will, deed or contract. *Brown* v. *Harmon*, 73 Ind. 412; *Lord* v. *Bourne*, 63 Me. 368; *Richardson* v. *Martin*, 55 N. H. 45; *Jacobs* v. *Jacobs*, 42 Iowa, 600; *Tilman* v. *Davis*, 95 N. Y. 17;

*Elsey* v. *Odd Fellows Association,* 142 Mass. 224; 1 Bouvier's Law Dic. 664.

All papers in connection with a contract, and used or referred to in the making thereof, and all statutes or by-laws bearing upon it, are to be considered in arriving at a construction of the contract. *Bullock* v. *Bullock,* 2 Dev. Eq. 307.

The fund arising from an insurance policy is the property of the beneficiary from the issue of the policy, and the assured can not thereafter control it. Bliss on Life Insurance, (2d ed.) 318; *Wilburn* v. *Wilburn,* 83 Ind. 55; *Elsey* v. *Odd Fellows Association,* 142 Mass. 224; *Gauch* v. *Life Ins. Co.* 88 Ill. 251; *Glanz* v. *Gloeckler,* 104 id. 573.

Where one of several terms or words may be used, the selection and use of one is the exclusion of the others. 2 Parsons on Contracts, 515, note t; *People* v. *Phelps,* 78 Ill. 147.

Facts and circumstances surrounding the parties at the time of making a contract or will, are proper to be shown in evidence, to aid in a proper understanding and construction of the writing. Schouler on Wills, sec. 579; *Smith* v. *Bell,* 6 Pet. 68; *Blake* v. *Hawkins,* 98 U. S. 315.

Mr. E. WALKER, for the defendant in error:

The contract is in the nature of a will. It directs the payment of the fund, on the death of the assured, to his heirs-at-law,—and those words mean those that would succeed to his estate on his death intestate. 2 Williams on Executors, 808, 809; *Rawson* v. *Rawson,* 52 Ill. 52; *Sutherland* v. *Sutherland,* 69 id. 484; *Richards* v. *Miller,* 62 id. 417; *Corbett* v. *Corbett,* 1 Jones' Eq. 114; *Rand* v. *Sawyer,* 115 Mass. 124.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill of interpleader, brought by the Northwestern Masonic Aid Association, a corporation organized under the laws of this State, in which it is alleged that the association was organized on the 27th day of June, 1874; that the object

for which it was formed was to secure pecuniary aid to the widows, orphans, heirs and devisees of deceased members; that on the 28th day of January, 1882, the association issued and delivered to Elijah S. Alexander three certificates, under which it agreed to pay, upon the death of Alexander, the sums therein named, amounting, in the aggregate, to $8500, to his devisees or heirs-at-law. It is also alleged that Alexander died on the 23d day of February, 1886, leaving no will or devisee; that proofs of death have been duly made; that the association is ready and willing to pay the amounts named in the certificates, to the person or persons entitled thereto; that Josephine P. Alexander, widow, Willard H. Alexander, father, Eunice L. Alexander, mother, Serotia A. Alexander, sister, and Charles E., John F. and Edward Frank Alexander, brothers of the deceased, make claim to the $8500. The bill prays that the parties named may be made defendants, that they may interplead, and settle and adjust their demands and differences between themselves, and that the fund should be distributed, by decree, between those entitled thereto.

Josephine T. Alexander, the widow, answered the bill, admitting, in substance, all its material allegations, and setting up her claim to the entire fund, as sole heir of the deceased. The defendants Willard H., Eunice L., Serotia A., Charles E. and John F. Alexander answered the bill, and set up that they are entitled to receive five-sixths of the fund, and they deny the right of Josephine P. Alexander, as widow or otherwise, to have or claim any part of the fund. Edward Frank Alexander answered the bill, and admitted all the material allegations therein. He set up that he was a brother of the deceased, and prayed that the court might make proper distribution of the fund according to equity. The administrators of the estate of the deceased filed their answers, disclaiming all interest in the fund as administrators.

In addition to the facts disclosed by the pleadings, it may be proper to state that the association furnished blanks for

applications, and deceased made his application, which was approved January 28, 1882. The application contains this clause: "To whom do you desire the money to be paid in case of death? State names, what *relations,* and how the money shall be divided." (Ans.) "To my heirs or assigns that I may hereafter elect." Three certificates were issued on the same day, (January 28, 1882,) each in like language in that respect, in which the association "do promise and agree to pay his devisees, or to the heirs-at-law of said Alexander," etc., sums aggregating $8500. Alexander died intestate February 23, 1886, leaving no child or descendants of child.

The Superior Court entered a decree April 23, 1887, finding all the material allegations in the bill to be true, and that the "widow is the sole heir-at-law to the personal property of said deceased, and that said other defendants have no right, title or interest in said sum of money, or any part thereof." The decree of the trial court was affirmed in the Appellate Court.

There is no controversy in this case in regard to the facts which control the decision of the question involved. Alexander, the person named in the certificates, died intestate, leaving no child or descendant of a child, but he left a widow, father and mother, one sister and three brothers. It is not claimed, as we understand the argument, by either side, that the fund is assets belonging to the estate of the deceased, which would pass to the administrators, to be used by them in the payment of debts and in the settlement of the estate, but it is conceded that the fund should be paid to the person or persons named in the certificates. The real question for determination seems to be one of construction. In other words, what does the contract entered into between Elijah S. Alexander and the Northwestern Masonic Aid Association mean? To whom, by the terms of the contract, shall the fund be paid?

In placing a construction on the contract of the parties, it must be remembered that in the use of the words named in the policies it will be presumed the parties had in view the

disposition of personal assets, and not real property, as they were dealing only with the disposition of personal assets.

The association, by the terms of the contract, as stated in the certificates, "within sixty days after receipt of satisfactory evidence of the death of Elijah S. Alexander," "do promise and agree to pay to his devisees, or to the heirs-at-law of said Elijah S. Alexander," the amount therein named. If Alexander had executed a will, and therein devised the fund to a person or persons therein named, such person or persons, beyond all doubt, would have been entitled to the fund; but as no will was made, there are no devisees to take, and we must now determine what was intended by the use of the words, "to the heirs-at-law of said Elijah S. Alexander."

In *Richards* v. *Miller*, 62 Ill. 420, this court had occasion to place a construction on a clause in a will where substantially the same language was used as is contained in the certificates under consideration. There Frances Miller, a married woman, executed a will. She first directed the payment of funeral expenses and debts, after which she made various specific bequests, among which was one of $2000 to her husband, John N. Miller. The testatrix then added a residuary clause, as follows: "I give, devise and bequeath to my heirs-at-law the remainder of my estate." The testatrix died without children or descendants of children, but left surviving her, a husband and brothers and sisters. During the settlement of the estate a controversy arose between the husband and the brothers and sisters of the deceased, in regard to the construction to be placed upon the words "heirs-at-law," as used in the residuary clause of the will, and it was there held, that the words employed will be presumed to have been used in their strict and primary sense, unless the context shows them to have been used in a different sense. When not thus explained, their legal and technical meaning will be enforced; that the word "heirs," unexplained by the context, will be held to mean the persons appointed by law to succeed to the estate in case of intestacy.

It is then said : "Where the will gave the residue of the estate to the heirs-at-law, uncontrolled by any other words, the property must descend according to the law of the place where it is situated, and where the will is to be carried into effect."

We might quote more from the opinion, which has a direct bearing on the case, but it will not be necessary to do so. The court, in plain and unmistakable language, held, that as the husband was an heir under the statute, he was entitled to share in the distribution of the estate.

We are unable to distinguish this case from the one cited *supra.* The language construed in the *Miller case* was found in a will, while here the same language is found in a certificate or policy of life insurance ; but that fact is of no importance. The rule of construction which should control in the one case should also govern in the other. The language used in the *Miller case* and in this case will be found to be identical. In the former, "I give, devise and bequeath to my heirs-at-law the remainder of my estate," while in the latter the language is, "do promise and agree to pay to his devisees, or to the heirs-at-law of said Elijah S. Alexander."

It is, however, said, the fact that provision had been made for the widow of Alexander under other life policies, which had been made payable directly to her, may be taken into consideration in construing the certificates of insurance. It will, however, be observed, that in the *Miller case* there was a special devise of $2000 to the husband, and yet he was allowed to take as an heir under the residuary clause in the will.

*Rawson* v. *Rawson*, 52 Ill. 62, is also a case involving the construction of a clause in a will similar to the provision in the certificates. It provided that the remainder of the testator's property should be distributed to his heirs-at-law according to the statute of Illinois in such case made and provided. The testator left no children, but his widow, parents, brothers and sisters survived him. The court held, that under the language used, the widow was entitled to take under the will,

and among other things said: "Our conclusion is, that as there is nothing in the will calling for a particular or special construction upon the term 'heirs-at-law,' as used in the will, it must be interpreted according to its strict technical import; that heirs-at-law are as made so by the statute, and are the person or persons on whom the law casts the estate in case of intestacy; that the widow of the testator is within the contingencies specified in the statutes, and is the heir-at-law to this estate."

It is said, in the argument, by the use of the words "my heirs," in the application, Alexander intended to designate his next of kin, and not his widow, as the persons who should receive the amount named in the certificates. The question in the application, as heretofore stated, was as follows: "To whom do you desire the money to be paid in case of death? State names, what relations, and how the money shall be divided." (Ans.) "To my heirs or assigns that I may hereafter elect." We do not think there is anything in the answer which discloses any intention on behalf of Alexander to have the fund upon his death pass to his next of kin. Indeed, there is no conflict, as to the persons named as beneficiaries, between the clause in the application and the clause in the certificates of insurance. Each names his heirs. The clause in the application throws no light on the intention of Alexander which is not found in the certificates of insurance.

It is also claimed that the words "heirs-at-law" should be construed in their popular sense; "that Alexander must have intended those persons who, in common parlance, are understood to be heirs,—whom the mass of mankind understand to be heirs." We do not concur in this view. It is to be presumed that Alexander knew who were meant by the words "heirs-at-law," and when he accepted a contract containing those words, in the absence of anything in the contract manifesting a different intention, we will presume that he adopted the legal meaning those words have when used in statutes,

deeds, and other instruments of writing, by persons skilled in the use of such words.

*Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 Ill. 252, is a case which has an important bearing in regard to the construction to be placed upon the words involved in this case.     There Gauch obtained a policy on his life, payable to "his legal heirs or assigns." He died leaving surviving him a widow and children. By his will the policy was devised to the children. The widow renounced the provisions of the will, and elected to take under the statute.     It was conceded that the policy did not pass to the children under the will of Gauch, and the question arose, whether the term "legal heirs," as used in the policy, included the widow. In passing upon this question it is said : "In certain contingencies, brothers, sisters, parents, and even kindred in the remotest degree, are heirs-at-law; but it would be absurd in the extreme to suppose that an individual having children, who should devise his property to his 'legal heirs,' intended all his kindred should take.     The legal presumption in such case would clearly be, that he intended those to whom the law would give his property, real and personal, he dying intestate ; and hence it is the actual capacity of inheritance at the time of the death of the owner of the property, and not the fact that a particular person might have inherited from him under a state of facts which did not exist, that determines who is heir."

If, as held in the case last cited, it is the actual capacity of inheritance at the time of the death of the owner of the property, that determines who is heir, no argument is needed to establish the right of the widow in this case to hold the fund as an heir of the deceased.

The law of descent (Rev. Stat. chap. 39, div. 3 of par. 1, "Rules of Descent,") provides, that "when there is a widow or surviving husband, and no child or children, or descendants of a child or children, of the intestate, then, after the payment of all just debts, one-half of the real estate and the whole of

the personal estate shall descend to such widow or surviving husband as an absolute estate forever." This clause of the statute establishes the right of the widow to claim the fund as heir, within the meaning of the terms of the policy. If Alexander, at the time the contract of insurance was made, had intended to make provision for his parents and brothers and sisters, doubtless they would have been named as such in the certificates of insurance. It is unreasonable to suppose that he had them in mind when the contract was made, otherwise they would have been mentioned as beneficiaries. The provision in the policy for the payment of the fund to the heirs-at-law was a very natural one, indeed. When the policy was obtained Alexander had no children, it is true; but who can say that he did not intend by the certificates of insurance, and by the use of the words "heirs-at-law," to provide for children who might be thereafter born unto him? Or, in the event that no living child or descendant of a child should survive him, then his widow should take the fund as sole surviving heir?

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.