SUSAN K. GRISWOLD, RESPONDENT, *v.* ALLEN C. SAWYER
AND ANOTHER, AS ADMINISTRATORS, ETC., APPELLANTS.

*" Legal representatives "* — *as used in a policy of life insurance, refers to executors
and administrators.*

In an action brought to determine whether the proceeds of a policy of insurance,
upon the life of one Alfred H. Griswold, deceased, should be paid to his widow
and children or to his administrators, it appeared by the policy that the insur-
ance company insured " the life of Alfred H. Griswold in the sum of $2,453,
the said sum insured to be paid at the office of this company, in Hartford,
Connecticut, to his .......... legal representatives," the word " his " being in
writing and two blank lines following it.

*Held,* that there was nothing to take the words " legal representatives " out of their
ordinary meaning; that they should receive their natural and obvious meaning,
and should be held to intend the executors or administrators of the assured.
(FISH, J., dissenting.)

APPEAL by the defendants, the administrators of Alfred H. Gris-
wold, deceased, from a judgment entered, in the above-entitled
action, in the office of the clerk of Washington county on the
7th day of October, 1889.

The judgment was entered upon the report of a referee, whereby
it was decided that after deducting certain costs and disbursements
the plaintiff and the defendants, Henry C. Griswold, Laura B. Gris-
wold, Mary Jane Bowen, Elizabeth Bascom and John B. Griswold,
were each entitled to receive one-eighth, and the defendant Gustavus
A. Griswold to receive one-quarter of the amount payable under a
policy of insurance upon the life of Alfred H. Griswold issued by
the Connecticut Mutual Life Insurance Company.

The action was brought to determine whether the proceeds of a
policy of insurance upon the life of Alfred H. Griswold, deceased,
should be paid to his widow and children or to his administrators.

The action was brought by the plaintiff, who is the widow of the
insured, against the Connecticut Mutual Life Insurance Company,
the company which issued the policy; the children of the deceased
and his administrators were also made parties defendants. The
insurance company paid the proceeds of the policy, $2,453, into
court, and thereupon an order was made discontinuing the action as
to it, and continuing it as to the other parties. It appeared upon

the trial that Alfred H. Griswold, prior to July 25, 1879, the date of the policy, was a man of large wealth and business interests; that he was then carrying about $25,000 of insurance upon his life; that he failed in business and was insolvent; that about the date in question he surrendered his various life policies and received in their stead "paid-up" policies, of which the policy in question was one. He died December 4, 1888, aged upwards of eighty years, intestate and insolvent, owing debts to the amount of upwards of $100,000, leaving the plaintiff, his widow, and seven children surviving him, all of whom are of full age, and with his administrators are the defendants in this action.

The policy in question recites that: The insurance company "insure the life of Alfred H. Griswold   *   *   *   in the sum of $2,453, the said sum insured to be paid at the office of this company, in Hartford, Conn., to *his* ........ legal representatives." The word "his" is in writing, two blank lines follow it; the other words quoted, except the name and sum, are printed.

The referee found that the widow and seven children were entitled to the proceeds of the policy, each to take one-eighth thereof, except the defendant Gustavus A. Griswold, who, having acquired the interest of William A. Griswold, took one quarter. The finding in favor of the widow was in pursuance of a concession to that effect by the children. The administrators appealed.

*Otis A. Dennis*, for the appellants.

*Charles G. Davis* and *J. S. Potter*, for the respondents.

LEARNED, P. J. :

This is a case in which the sympathy of the court must be in favor of the widow and children. But we ought not to be influenced by sympathy or to give the amount to them because they need it and because it will be a small sum to distribute among all the creditors. The simple question is : What does the contract of insurance mean ?

In the very brief testimony given it is not stated to whom was payable the old policy which was surrendered in 1879, when the present policy was issued. But, under the decision in *Whitehead* v. *New York Life Insurance Company* (102 N. Y., 143), we may infer that that was not payable to wife or children. If it had been,

the insured could not have surrendered it; and, without doubt, in that case the new would, in its language, have followed that of the old.

There are no circumstances which can aid in the construction of the policy, except the fact that at the time when it was issued the insured, who had previously been a man of large means, had become insolvent and had lost his property, and that large judgments had been recovered against him. Whether those judgments had since been paid, and what was his pecuniary condition at his death in 1889, do not appear. And even the fact of insolvency in 1879 is not found by the referee. The referee finds no extraneous facts on which to base his construction of the instrument. He finds nothing even as to the intention of the assured; which, the respondents assert, was to benefit his wife and children. On the other hand, the appellant intimates that the assured had paid off his debts. It is quite doubtful whether his pecuniary condition throws much light on the terms of the policy.

There can be no doubt that the ordinary meaning of the words " legal representatives" of a deceased person is his executors or administrators, as the case may be. It is true that the context of a written instrument may sometimes require a different meaning. Nothing in the context here requires anything but the ordinary meaning.

Nor is there anything in the circumstances which shows that the deceased and the company had any other meaning in view. The policy was not issued in anticipation of approaching death. The insured lived some nine years after. There is no reason to think that he intended to deprive himself of the power of transferring and disposing of the policy. His embarassed financial condition might naturally make him desire to have some control over this contract, so that, if occasion required, he might use it. He might have expected to get free from his debts. He might also have preferred that the amount secured should, at his death, be used to pay his debts, if any remained, rather than it should go to his next of kin; wishing to be just before he was generous.

There is another consideration which might have deterred the insured from making this policy payable to his wife; and that is the restriction of chapter 277, Laws of 1870. (*Masten* v. *Amerman,* 20 Abb. N. C., 443.) The insured had had policies amounting to

$25,000, and the yearly premiums may very possibly have exceeded $500. I see, then, nothing to take the words in question out of their ordinary meaning. And the ordinary meaning should prevail when there is no need of any other. The natural and obvious meaning should be taken. (*McCluskey* v. *Cromwell*, 11 N. Y., 593.)

An examination of the contract itself strengthens this view. It was a printed form. The printed words "legal representatives" followed a blank space evidently left for the name of the beneficiary. In this blank space was written the word "his" and the rest of the space was filled with red lines. Had the wife or children been intended, their names or designation would have been inserted in this blank space. In the case of *Drake* v. *Pell* (3 Edw. Ch. 270), a will gave property to a child of the testator, and if the child died after twenty-one, then to "the heirs, devisees or legal representatives of the child." The court held that "legal representatives" there meant next of kin, who were to take the child's share of the personal estate, and who would take directly, and not through executors of the child. The context and connection made this plain. *Greenwood* v. *Holbrook* (111 N. Y., 465), was the construction of a written agreement made on settlement of a controversy over a will. The widow contracted to pay during widowhood a certain part of the income of the estate to each child, and in case of the child dying, to its "legal representatives." A child died and bequeathed her interest to her husband, making him executor. The brothers of the child (who left no issue) claimed the income against the husband. The court said there would have been no occasion to add the words "legal representatives," because a contract to pay would have passed to the executor. And they held the brothers to be entitled as next of kin; keeping in mind the original provisions of the will.

In both of these cases it will be seen that there was to be a payment to a child of the person from whom the property came, and, in case of death, to the legal representatives of such child. Thus the gift after the death of the child was like a remainder over, which would go to some remainderman and would not be a part of the child's estate. The present case bears no analogy.

But we may test this question in another way. Can there be the least doubt that the insured, during his lifetime, could have assigned or surrendered this policy? If so, he was the absolute owner, and

no one but himself had any interest in it as beneficiary. Thus it became part of his estate at his death. If, on the other hand, as the respondents claim, the words "legal representatives" now mean children (and it does not seem to be asserted that they include the wife) (*Tillman* v. *Davis*, 95 N. Y., 17, 25), then they had that meaning during the lifetime of the assured, and the company would have been bound to know that the policy was payable to the children. (See *Whitehead Case, ut supra.*)

We must give the policy the meaning which it had when it was executed. The payees were designated at that time. If executors and administrators were not intended, were the next of kin intended, whoever they might be? Then the policy was not solely for descendants. Were children intended? But unless they survived him, they would not be his representatives. It does not seem to me that the company would have had any reason to think that the assured was not the owner of the interest in the policy.

It may be that men often take out policies on their lives for the benefit of their families. But this is not the universal case. Men who have no families take out policies. Others take out policies as investments. If this decision is to stand, then if a man is insolvent and has children, the words executors and administrators on his policy will also have to be construed to mean "next of kin."

Of course, I do not say that the words "legal representatives" can never mean next of kin or heirs. When the context requires, or where the situation of the estate compels, then, of course, courts may give to the words a meaning thus made necessary. But there must be something more than a guess as to the probable wishes of the party to the contract, when those supposed wishes could have been made unquestionable by three words.

The judgment should be reversed, referee discharged, new trial granted, costs to abide event.

LANDON, J.:

I concur in the opinion of the presiding justice. If the action were between the administrators and the company, I think it would have to be held that the facts urged in behalf of the children of the insured constitute no defense. On the face of the policy the administrators have the better right, and the most that can be said against

it is that possibly the insured did mean the policy to be for the benefit of his children and not of his estate. A *prima facie* case cannot be overcome by mere conjecture.

FISH, J. (dissenting):

The assured was a husband and father. It can scarcely be doubted that, in procuring the insurance upon his life to take effect upon his death, he had in view the making provision for his wife and children. Unless he was an unnatural husband and father such was his intent. It is almost a self-evident proposition.

*His* intent, rather than that of the *insurance company*, should be the chief inquiry. The corporation or its executive officers probably did no thinking and had no emotions upon the subject, but had engaged to pay and was ready to pay to whomsoever the assured directed. It does not here take sides, and claims no voice in determining the beneficiaries.

Slight circumstances, then, ought to suffice in giving construction to, and to characterize the meaning and application of, the words used in the policy, so as to prevent gross and unnatural results, such as would come if the fund was adjudged to belong to the administrator.

I, therefore, favor the affirmance of the judgment.

Judgment reversed, referee discharged, new trial granted, costs to abide event.