HUBBARD, PRICE & COMPANY *et al. v.* TURNER *et al.*

The word "heirs," in a policy of life insurance payable to the "heirs or assigns" of the assured after his death, he never having had a wife or child, is to be construed as meaning his next of kin according to the statute of distributions, which in Georgia, when the decedent leaves no widow, is the same as the statute of descent or inheritance.  Although the heirs, as beneficiaries of the policy, are to be ascertained by reference to the statute, they become beneficiaries and take their interest by virtue alone of the contract in their behalf embraced in the policy, and not in any respect by virtue of the statute; wherefore, on the death of the assured intestate without having assigned the policy, they take its proceeds as purchasers, and not as heirs or distributees.  This being so, these proceeds are no part of the estate of the assured, and are not subject to the claims of his creditors, unless, by reason of some fraud, actual or constructive, committed by the assured upon their rights in taking out or keeping up the policy, the creditors are equitably entitled to follow and reclaim money invested in

the policy which ought to have been used or reserved for use in satisfying their demands.

June 18, 1894.   Argued at the last term.

Interpleader.   Before Judge FALLIGANT.   Chatham superior court.   March term, 1893.

A. MINIS and BARROW & OSBORNE, for plaintiffs in error.

CABANISS & WILLINGHAM, by HARRISON & PEEPLES, contra.

LUMPKIN, Justice.

Charles C. Hardwick, in his lifetime, took out a policy of insurance payable to his "heirs or assigns." The contest in the present case was between his creditors and his heirs at law, who were his sister, two nieces and a nephew (he never having had a wife or child), over the fund derived from this policy, which had been paid over by the company to Hardwick's administrator. The policy was issued in 1869; the debts due the contesting creditors were made in 1890. Hardwick had never assigned the policy, and died insolvent. There was no evidence that he was insolvent when the policy was taken out, nor that any of the premiums upon it were paid when he was insolvent, nor that any of the present claims against his estate were in existence at any time when any premium was paid. The judge, upon the above state of facts, rightly decreed that the heirs were entitled to the proceeds of the policy in the administrator's hands.

What is the meaning of the words "heirs" as used in this policy? Under our statute of distributions, which is the same as the statute of descent or inheritance when the decedent leaves no widow, this word certainly means "the next of kin." Code, §§2484, 2570. As the assured was unmarried and childless, he doubtless intended to provide for those who would, at the time of his death, be entitled to his estate as his legal distributees, unless,

v 93-48

during his life, he should choose to divert in another direction the proceeds of the policy by himself assigning it.    As he never did assign it, and as he remained unmarried up to the time of his death, we are satisfied the intention remained with him to the last that his next of kin should take the proceeds of the policy by virtue of the contract he had made in their behalf with the insurance company.    Reference is had to the statute simply for the purpose of ascertaining who are the beneficiaries of the policy; but when thus ascertained, their right to the money is not derived from the statute, but solely from the contract embraced in the policy.    In other words, they take the proceeds, not as heirs or distributees of the deceased, but as purchasers.    This being so, the proceeds of this policy were not, under the facts of this case, any part of the estate of the assured, and therefore, not subject to the claims of his creditors. Had any fraud, actual or constructive, been committed by the assured upon their rights, either in taking out or keeping up the policy, they might be equitably entitled to follow and reclaim money which the assured had invested in the policy and which ought to have been used, or reserved for use, in satisfying their demands. No reference is here intended to the class of cases falling under section 2820 of the code.    Where the assured directs the money due upon a policy to be paid to any of the persons designated in that section, even though he may be insolvent and use in paying premiums money to which his creditors are equitably entitled, no person can defeat the policy.    This is so because the law so declares in express terms.    But granting that in the present case the creditors of Hardwick might, for any equitable reason, have been entitled to follow and reclaim money invested in this policy, no such equitable reason appears in the facts.    It was not shown that, by reason of insolvency, or by reason of his using his means in

paying premiums upon the policy, they lost or were deprived of any money which they ought or otherwise would have received.

It was strenuously insisted for the creditors that the true construction of the words " heirs or assigns," as used in this policy, would make it mean that the policy was payable to the legal representatives or to the estate of the deceased, and that therefore its proceeds were assets for the payment of his debts in the due course of administration. We confess that the question is not altogether free from doubt, but we have given the instrument that construction which, in our judgment, best accords with the real intention and purpose of the assured. Men much more rarely take life insurance for the benefit of creditors · than for the benefit of those to whom they are related by ties of blood or affection. In support of the creditors' contention, the case of *Rawson & Co.* v. *Jones*, 52 *Ga.* 458, was relied upon. There the policy taken out by Jones was payable to " his heirs, executors, administrators or assigns." He had no wife or child, never having been married. This court held that this policy was payable to the legal representative of Jones, and therefore was legal assets in his hands for the payment of debts and for distribution. Judge TRIPPE stated that the introduction of the word " heirs " did not affect the construction, and added : " The terms ' heirs, executors and administrators' are not words that are used where those who are next of kin are intended to have a right given them· directly by the instrument—for instance, as purchasers ; but are the terms usually employed to signify that if they take at all, it is not directly, but through an administration." The use of the words " executors and administrators" manifested a clear intention on the part of the assured to vest the proceeds of the policy in his legal representatives, and the mere fact that the word " heirs " was used

in connection with these other words, would not author-
ize a court to give the policy a construction which
would defeat the obvious intention of the assured, be-
cause, taking all together the language employed, it was
just such language as in other instruments disposing of
personal property would vest it in an administrator.

We think the present case is different from the one
just cited. Here, there were no words manifesting a
positive intention that the proceeds of the policy should
become a part of the estate of the assured. If the word
" assigns " had not been used, but only the word
" heirs," there could be no doubt the next of kin would
be entitled to its proceeds. The effect of inserting the
word " assigns " was not to make the assured the owner
of the proceeds, but merely amounted to a reservation
to him of the power to appoint who should take. With
this word in the policy, the assured could have cut off
those who were to become his heirs at law, by appointing
others in their place while he yet lived. As he did not
do this, their rights under the policy as purchasers re-
mained intact and complete.

We are aware there are decisions contrary to the con-
clusion we have reached in this case, but we are never-
theless satisfied with the correctness of our judgment, and
will mention a few authorities, which, to some extent, sus-
tain it. The case of Mullins *v.* Thompson, 51 Tex. 7, in
which it was held that a policy payable to the " heirs or
assigns " of the assured was assignable by him, but not
having been assigned, the heirs were entitled to its pro-
ceeds on the death of the assured, is very much in point.
In Pace *v.* Pace, 19 Fla. 438, the words " for the benefit
of the estate of the insured " were, by the aid of ex-
trinsic evidence, construed to mean that the policy was
for the benefit of a minor child, and that its proceeds
did not go to the administrator of the assured. The
Supreme Court of Missouri, in Loos *v.* Hancock Mutual

Life Insurance Company, 41 Mo. 538, held that the words " heirs or representatives," in a policy of life insurance, entitled the heirs or next of kin to the money, as against the executor or administrator of the assured, it appearing from the context that the object of the assured was to make provision for his family. So, in Hodges' Appeal (Pa.), 9 Ins. Law Jour. 709, it was held that the phrase " heirs and legal representatives," in an insurance policy, meant the next of kin, and that the fund was no part of the decedent's estate which his administrator was entitled to receive. In Griswold v. Sawyer, 125 N. Y. 411, it was held that the words " legal representatives " may be shown to be the dependent family of the assured, and not his administrator, overruling Griswold v. Sawyer, 56 Hun, 12. In Weisert v. Muehl, 81 Ky. 336, it appeared that the assured took out a policy payable " to his heirs," and it was held that the persons answering that description at the time of his death were entitled to the proceeds of the policy in preference to the widow, to whom the assured had specifically bequeathed the amount due on this policy by will. As to the meaning of the words " heirs " and " legal heirs," as used in policies of life insurance, see Wilburn v. Wilburn, 83 Ind. 55, and Gauch v. St. Louis Mutual Life Insurance Company, 88 Ill. 251. Many of the above cited cases strongly support the interpretation we have given the word " heirs " as used in the policy before us; and the reasoning of these cases, and the authorities they cite, also, as stated above, sustain our conclusion that the creditors of Hardwick were not entitled to the proceeds of this policy as against the claim of his heirs at law.

The fact that the money was paid by the insurance company to the administrator, while it may tend to show that, in the opinion of the managers of the insurance company, he was the proper person to receive it, will

not prevent the heirs from claiming the money, if they are really entitled to it, as we have held.

*Judgment affirmed.*