THE PEOPLE, for use of Ellen L. Brooks *et al.*

*v.*

RICHARD S. PETRIE *et al.*

*Opinion filed October 24, 1901.*

1. EXECUTORS AND ADMINISTRATORS—*executor's bondsmen not liable for default other than as executor.* If an executor does not originally receive or subsequently hold money as executor, but receives and holds it individually or as trustee for the widow and heirs, the sureties on his bond as executor are not liable in case of his conversion of the money to his own use.

2. SAME—*when proceeds of insurance certificate are received by executor as trustee.* If the contract of a benefit society with a member is to pay the proceeds of the certificate "as a benefit to his devisees, as provided in his last will," and by such last will the proceeds of the certificate are bequeathed to a named person "in trust for my legal heirs," then the person so named takes the proceeds of the certificate as trustee, even though he is also named by the testator as executor and qualifies as such.

3. SAME—*a mere charge by executor against himself does not create a liability against bondsmen.* That an executor and trustee mentions a trust fund in his petition for appointment and in his inventory as being a part of the property of the estate, does not create a liability against the sureties on his bond as executor if they are not otherwise liable under the law.

*People, for use, etc.* v. *Petrie*, 94 Ill. App. 652, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Mercer county; the Hon. W. H. GEST, Judge, presiding.

This is an action of debt, (debt $10,000.00; damages $10,000.00) begun on March 23, 1899, by the People suing for the use of Ellen L. Brooks, widow, and Elmer O. Brooks, Fannie J. Brooks, Frank S. Brooks, Clarence E. Brooks, Genevra Brooks, Rolla W. Brooks and Eunice E. Brooks, children of one Benjamin F. Brooks, deceased, against the appellees, Richard S. Petrie and Cornelius L. Petrie, sureties upon a bond executed in his lifetime

191—32

by one Alexander P. Petrie, now deceased, as executor of the estate of the said Benjamin F. Brooks, deceased. A part of the declaration was demurred to, and the demurrer was overruled by the court. The defendants below filed four pleas, to three of which plaintiffs below filed *similiters;* and to the fourth filed a replication, to which there was joinder by the defendants. The cause was tried by agreement of parties before the court without a jury. The plaintiffs below, appellants here, submitted to the trial court six propositions, to be held as law in the decision of the case, all of which were refused by the court. The defendants below submitted six propositions, to be held as law in the decision of the case, all of which were so held by the court. To this action of the court exception was taken by plaintiff. A motion for new trial was made and overruled. Thereupon, judgment was entered against the plaintiff below and in favor of the defendants, to which exception was taken by the plaintiffs. An appeal was taken from the judgment, so entered upon the findings of the trial court, to the Appellate Court, and there said judgment has been affirmed. The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court.

The declaration alleges that, at the November term, 1886, of the county court of Mercer county, to-wit, on November 28, 1886, Alexander P. Petrie was appointed executor of the will of Benjamin F. Brooks, deceased, and qualified as such executor, and letters testamentary were then and there issued to him; that Alexander P. Petrie entered into bond, with the appellees Richard S. Petrie and Cornelius L. Petrie as sureties, in double the value of the estate; that they thereby bound themselves in the penal sum of $10,000.00 to be paid to the People. The declaration then proceeds to state the terms of the bond and its condition, as set forth in section 7 of the "Act in regard to the administration of estates." (1 Starr & Cur. Ann. Stat.—2d ed.—p. 271).

The declaration alleges, that Alexander P. Petrie took upon himself the execution of the will and the administration of the estate, and continued to be executor until he died on December 5, 1898; the declaration then alleges, that he did not faithfully discharge the duties of the office of executor according to the conditions of the bond, and neglected and refused to do so to the injury of said widow and children. The declaration then sets forth a copy of the will of Benjamin F. Brooks, deceased, dated August 18, 1886. It also sets forth a copy of a certificate of life insurance in the Covenant Mutual Benefit Association of Galesburg, dated September 12, 1877, and issued to the said Benjamin F. Brooks, together with the conditions and agreements upon which the certificate was issued, and the instructions to the certificate holder. The declaration also sets forth a certain receipt, dated Galesburg, February 11, 1887, signed by A. P. Petrie, acknowledging the receipt by him from said benefit association of said sum of $5000.00 in full of all claims under said certificate of membership on the life of the late Benjamin F. Brooks. The declaration further alleges that, on November 24, 1886, A. P. Petrie made, and on November 28, 1886, filed in said county court his inventory as executor of said estate, in which said inventory no real estate is described, but said certificate for $5000.00 is described.

The declaration further avers that, on February 11, 1887, A. P. Petrie, as executor, received from said benefit association, on the policy of life insurance mentioned in the will, said sum of $5000.00, and receipted for the same; that said Petrie did not pay the several legacies and bequests named in the will, or any part thereof, to the plaintiffs, nor to any one of them, but wasted said money and effects and converted and disposed of the same to his own use; that, on December 5, 1898, the said A. P. Petrie died intestate and insolvent, leaving no estate, real, personal or mixed.

The plaintiffs aver in their declaration, that A. P. Petrie never at any time settled or adjusted his accounts as executor in the said county court, or in any other court, and never made application for discharge as such executor, and that he never was discharged as such executor; that he never at any time filed a bond, or qualified, as trustee under the will, and never turned over the funds in his hands as executor to himself as trustee; that, until the time of his death, the said sums were in his hands as executor, and not in the capacity of trustee; that he has never accounted for the same, as executor, and never in any way charged himself with the same, as trustee.

The declaration assigns, as a further breach of the condition of the bond, that A. P. Petrie did not make and render a fair and just account of his actings and doings as executor to the county court, but failed and refused so to do, whereby said writing obligatory has become forfeited, etc.

The first plea of the defendants below alleged, that the said A. P. Petrie did make and render a fair and just account of his doings as executor. The second plea alleged, that, as to the first breach assigned in the declaration, said Petrie did not have or hold said moneys as executor at the time of his death, nor at any other time. The third plea averred that said Petrie did not receive said moneys, as executor, from the said benefit association in manner and form as alleged in the declaration. The fourth plea averred that the said Petrie in his lifetime paid to Ellen L. Brooks a large sum of money, to-wit, $5000.00, which exceeded the interest received for said money, in full discharge of all the interest received upon the same.

Said benefit certificate, or certificate of membership, after reciting that the Covenant Mutual Benefit Association of Illinois issues the certificate, and constitutes Benjamin F. Brooks a member of said association, provides

as follows: "And the sum so collected on such assessments * * * the association hereby agrees well and truly to pay or cause to be paid as a benefit to his devisees, as provided in last will and testament, or in the event of their prior death, to the legal heirs or devisees of the certificate holder, at the principal office of the association, in the city of Galesburg, Illinois, within ninety days from the date of the acceptance of said evidence of death, any assessments or other indebtedness of the certificate holder to the association being first deducted therefrom, but in no case shall the payment under this certificate exceed $5000.00," etc.

The second clause of the will provided that at the death of the widow, or in case of her death before the youngest child became twenty years of age, then when the youngest child then living should have attained the age of twenty years, the whole of his estate, after making a certain deduction, should be divided between his sons and daughters (naming them) share and share alike. The third clause of the will of Benjamin F. Brooks, deceased, is as follows: "I give and bequeath to A. P. Petrie in trust for my legal heirs before named the proceeds of one certificate of life insurance in the Covenant Mutual Benefit Association of Galesburg, State of Illinois, numbered 620, for the sum of five thousand dollars ($5000.00) which I have had made payable to said A. P. Petrie to be disposed of as follows, to-wit: The principal to be kept at interest until the death of my wife, Ellen L. Brooks, or until my youngest child then living shall have attained the age of twenty (20) years should the death of my wife occur before the said child shall have attained that age, at the rate of eight per cent per annum, the interest or income to be paid to my wife, Ellen L. Brooks, quarterly, and I further direct that the said A. P. Petrie sell my tools, shop and all my estate of every name and nature whatsoever, and pay the amount over to my wife, Ellen L. Brooks." The fourth clause of the will appoints A. P.

Petrie guardian of the minor children. The last clause of the will appoints A. P. Petrie to be the executor of the will.

The plaintiffs below introduced in evidence the petition of A. P. Petrie, dated and filed in the county court on November 13, 1886, addressed to the judge of said court, alleging that B. F. Brooks died testate on October 20, 1886, and presenting his will for probate, and further alleging that the testator by his will appointed the petitioner executor; that said petitioner is willing to accept the office and trust confided to him, and containing the following averment, to-wit: "This petition further shows that the said B. F. Brooks died seized and possessed of and personal estate, consisting chiefly of an insurance policy amounting to $5000.00, all of said personal estate being estimated to be worth about $5000.00;" and praying that the will be admitted to probate, and that letters testamentary be issued to the petitioner. The plaintiffs below also introduced in evidence the executor's bond and oath in the form specified in sections 6 and 7 of said act. (1 Starr & Curt. Ann. Stat.—2d ed.—p. 271). The plaintiffs also introduced in evidence the inventory filed by the executor, as above set forth, and also the appraisement bill, showing that the widow, Ellen L. Brooks, was allowed $833.00, and that the articles of personal property amounted to $327.00, which appraisement bill was dated December 18, 1886. They also introduced said receipt for $5000.00, and proved that the testator died on October 20, 1886, and that A. P. Petrie died on December 5, 1898. They also introduced in evidence the widow's selection of property on the award, dated December 20, 1886, and her receipt for the same, being all the property inventoried and appraised excepting the certificate of insurance, and amounting to the sum of $327.00. The plaintiffs also introduced in evidence eighteen receipts signed by the widow, Ellen L. Brooks, executed to A. P. Petrie, and showing that the latter made yearly payments to her

of the interest accruing upon the $5000.00 in his hands up to November 18, 1891. It was also proven that, after November 18, 1891, said Petrie paid to Mrs. Brooks, at various times, the total sum of $1452.52 as interest upon the funds in his hands, taking no receipts therefor.     ˙

JAMES M. BROCK, and W. J. GRAHAM, for appellants:

Where an executor is also appointed trustee in the will, but gives bond only as executor, he is chargeable in that capacity for the property in his hands until he has given bond as trustee and charged himself with the property as trustee   *Prior* v. *Talbot*, 10 Cush. 1.

When one is both executor and trustee under a will, his responsibility, and that of his sureties, as executor does not cease until he is discharged as executor and qualifies as trustee, or until there is some open and notorious act which would change the capacity in which he acts.   *In re Higgins' Estate*, 28 L. R. A. 116; *Cranson* v. *Wilsey*, 39 N. W. Rep. 9; *Wilson* v. *Wilson*, 17 Ohio St. 151; *Cluff* v. *Day*, 124 N. Y. 195; *Newcomb* v. *Williams*, 50 Mass. 525; *Hall* v. *Cushing*, 9 Pick. 395; *White* v. *Ditson,* 140 Mass. 351; *Miller* v. *Congdon*, 14 Gray, 114; *Sheffield* v. *Parker*, 33 N. E. Rep. 501.

Money arising from an insurance policy is assets of the estate.   *Harding* v. *Littledale*, 150 Mass. 100; *Webb* v. *Roetinger*, 12 Ohio C. C. 730; *Kelly* v. *Mann*, 10 N. W. Rep. 211; *Insurance Co.* v. *Stevens*, 19 Fed. Rep. 671.

The executor of a testator is the proper person to receive money due on a policy of insurance on a testator's life, payable subject to the will of the insured.   *Winterhalter* v. *Guaranty Ass.* 17 Pac. Rep. 1.

The bond of an executor covers all funds received under color of his official authority.  *Clark* v. *Fredenberg*, 5 N.W. Rep. 306; *Musick* v. *Beebe*, 17 Kan. 47.

Where, by a will, certain trusts are vested in the executors as such, an executor, by accepting the office and qualifying, accepts the trust so conferred. (*Earle* v. *Earle*,

93 N. Y. 104.) And having so accepted, his sureties as executor are bound for the execution thereof. *Woodburn* v. *Woodburn*, 123 Ill. 608; *Nevitt* v. *Woodburn*, 56 Ill. App. 347.

GUY C. SCOTT, and BASSETT & BASSETT, for appellees:

If a testator in his will appoints his executor to be a trustee, it is as if different persons had been appointed to each office. A court of equity cannot remove him from the executorship, for courts of probate have exclusive jurisdiction over the appointment and removal of administrators and executors. 2 Woerner on Executors, 721; 1 Perry on Trusts, sec. 281; Schouler on Executors, secs. 247-472.

Where the same person is executor and guardian, or executor and trustee, the money coming to him as executor will be presumed to have been paid to his account as guardian or trustee. After the lapse of a considerable period (after funds coming to his hands as executor) the presumption may fairly be that the estate has been fully administered by the executor, and accordingly that the funds are held by him in the new character as trustee. Schouler on Executors, sec. 247; 1 Woerner on Aministrators, 391; *Jennings* v. *Davis*, 5 Dana, 127.

The inventory of the policy of insurance, or any other act by the executor, could not make the sureties liable. *People* v. *Huffman*, 182 Ill. 405; *Shields* v. *Smith*, 8 Bush. 601; *Clay* v. *Hart*, 7 Dana, 1.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This suit is brought for the purpose of holding the appellees, Richard S. Petrie and Cornelius L. Petrie, liable as sureties upon the executor's bond of Alexander P. Petrie, deceased, for the $5000.00 paid to said Alexander P. Petrie on February 11, 1887, by the Covenant Mutual Benefit Association of Illinois upon the insurance certificate, described in the statement preceding this opinion.

The liability or non-liability of appellees, as such sureties, depends upon the solution of the question, whether or not the executor, Alexander P. Petrie, received the sum of $5000.00, being the amount of the insurance certificate, as executor, and held it in his hands as executor up to the date of his death on December 5, 1898. If Alexander P. Petrie did not originally receive or subsequently hold said money as executor, but received it as an individual, or as trustee for the widow and heirs of Benjamin F. Brooks, deceased, then the sureties on his executor's bond would not be liable, as their contract, evidenced by their bond, was for his performance of his duty as executor, and not otherwise.

*First*—The first question in the case, then, is this: Were the proceeds of the benefit certificate, paid to Alexander P. Petrie, and amounting to $5000.00, assets of the estate of Benjamin F. Brooks, or not? The general rule is, that the proceeds of such a certificate are not assets of the estate.

"Moneys received on a certificate of membership in a mutual benefit association, the constitution and by-laws of which provide for insurance for the benefit of the member's family, or for such persons as the member may designate, go, on the death of the member, to his family, or the person designated by him, and are not assets subject to the payment of his debts." (11 Am. & Eng. Ency. of Law,—2d ed.—p. 847, and cases in note 1). Elsewhere in the same encyclopedia (vol. 3, p. 1108) it is said: "The right to receive benefits becomes vested in the legally designated beneficiary immediately upon the death of the member while in good standing, and the amount apportioned from the fund should be paid direct to such beneficiary, not to the executor or administrator of deceased."

In addition to the fact that the money, realized upon these benefit certificates, is for the benefit of the certificate holder's family, or heirs, or devisees, or those dependent upon him, the rule, that the proceeds of such a

certificate are not assets of the estate of the deceased certificate holder, rests upon the further fact, that the proceeds of the certificate are not his property at the time of his death. An executor or administrator takes, and administers upon, the estate owned by the testate or intestate as it existed at the time of his death. The certificate holder is not entitled to realize the amount due upon the certificate while he is alive. Only the beneficiary named in the certificate takes the money, and this can only be after the death of the certificate holder.

Moreover, the contract of the benefit association or insurance company is to pay the money, due upon the certificate, to the beneficiary designated upon the face of the certificate. The contract is to pay to the person so designated, and not to pay to the estate or representatives of the certificate holder, unless the latter are specially designated by the certificate itself as the persons entitled to take the money.

A person in his lifetime took out a policy of insurance payable to his "heirs and assigns;" he died intestate, unmarried and childless, and leaving, as his heirs-at-law, a sister, two nieces and a nephew; a question arose as to whether his creditors or his heirs-at-law should have the fund derived from the policy; and it was held that the heirs were entitled to the proceeds of the policy; and it was further held, in regard to the meaning of the word, "heirs," that reference was had to the statute simply for the purpose of ascertaining who were the beneficiaries of the policy, but that, when they were thus ascertained, their right to the money was derived, not from the statute, but solely from the contract embraced in the policy; that is to say, that the next of kin of the deceased were entitled to take the proceeds of the policy by virtue of the contract he had made in their behalf with the insurance company; and, in so holding, the following language was used: "In other words, they take the proceeds, not as heirs or distributees of the deceased, but as purchas-

ers. This being so, the proceeds of this policy were not, under the facts of this case, any part of the estate of the assured, and, therefore, not subject to the claims of his creditors." (*Hubbard, Price & Co.* v. *Turner*, 93 Ga. 752; *Hubbard* v. *Turner*, 30 L. R. A. 593, and cases in note).

In the case at bar, the benefit certificate or life insurance policy provides as follows: "The association hereby agrees well and truly to pay or cause to be paid as a benefit to his devisees, as provided in last will and testament, or, in the event of their prior death, to the legal heirs or devisees of the certificate holder," etc. There is no contention here, that the devisees named in the will of Benjamin F. Brooks died, and, therefore, the words, "or, in the event of their prior death, to the legal heirs or devisees of the certificate holder," may be considered as eliminated. By the terms of the certificate, the association agrees "to pay or cause to be paid as a benefit to his devisees, as provided in last will and testament." The contract between the association and Benjamin F. Brooks was for a payment "to his devisees as provided in last will and testament," and not to his executors. The contract was made directly for the benefit of his devisees. We turn, therefore, to his will to learn who are his devisees, as provided therein. The third clause of the will says: "I give and bequeath to A. P. Petrie, in trust for my legal heirs before named, the proceeds of one certificate of life insurance in the Covenant Mutual Benefit Association of Galesburg, State of Illinois, numbered 620, for the sum of five thousand dollars ($5000.00), which I have had made payable to said A. P. Petrie, to be disposed of as follows, to-wit," etc. The contract, therefore, of the association was to pay the money to A. P. Petrie in trust for the legal heirs of Benjamin F. Brooks, as named in his will. In the third clause of his will he expressly states, that he had made the certificate payable to said A. P. Petrie to be disposed of in a certain way, and thereby himself designated A. P. Petrie,

trustee, as the devisee intended by the language of the insurance certificate. As in the case of *Hubbard* v. *Turner, supra,* the statute may be referred to to ascertain who the heirs are when the certificate is for the benefit of "heirs," so the will may be referred to for the purpose of ascertaining who the devisees are when the certificate is made out for the benefit of devisees, as the beneficiaries. In neither case, however, is the right to the money derived from the statute or the will, but solely from the contract embodied in the policy.

The foregoing views are sustained by the following authorities: *Alexander* v. *Northwestern Masonic Aid Ass.* 126 Ill. 558; *Covenant Mutual Benefit Ass.* v. *Sears,* 114 id. 108; *Covenant Mutual Benefit Ass.* v. *Hoffman,* 110 id. 603; *Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 id. 251; *Worley* v. *Northwestern Masonic Aid Ass.* 10 Fed. Rep. 227; *Smith* v. *Covenant Mutual Benefit Ass.* 24 id. 685.

In *Benefit Ass.* v. *Sears, supra,* the language of the benefit certificate was the same as that in the case at bar, that is to say, the association there agreed "to pay or cause to be paid as a benefit to his devisees, as provided in last will and testament, or in the event of their prior death, to the legal heir or devisees of the certificate holder;" and it was there held that the promise was, in substance, to pay his devisees, if there should be devisees to take, and if not, then to pay to his heirs.

In *Alexander* v. *Northwestern Masonic Aid Ass. supra,* a certificate of life insurance in a benevolent society was taken payable to the "devisees or heirs-at-law" of the certificate holder, and it was there said (p. 561): "It is not claimed, as we understand the argument, by either side, that the fund is assets belonging to the estate of the deceased, which would pass to the administrators to be used by them in the payment of debts and in the settlement of the estate, but it is conceded that the fund should be paid to the person or persons named in the certificates. * * * If Alexander had executed a will, and therein

devised the fund to a person or persons therein named, such person or persons, beyond all doubt, would have been entitled to the fund."

In *Worley* v. *Northwestern Masonic Aid Ass. supra*, it was held that a policy, or certificate of a corporation incorporated for benevolent purposes, under the provisions of State statutes, by the terms of which the corporation agreed to pay to the devisees of the deceased a sum of money within a certain number of days after receiving evidence of his death, was not a part of the estate of the deceased, nor recoverable as such by his administrator.

There is a class of cases, some of which are referred to by counsel for the appellants, which seem to hold the contrary of this view; but it will be found that, in such cases, the language used in the certificate indicated an intention on the part of the deceased certificate holder, that the proceeds of the certificate should be a part of his estate, and should go to his administrator or executor for the payment of debts.    Thus, in *People* v. *Phelps*, 78 Ill. 147, the policy by its express terms was payable to the party's "legal representatives;" and it was there held that the proceeds of the certificate would be assets in the hands of the executor or administrator and subject to the payment of debts, because the words "legal representatives," in the commonly accepted sense, meant administrators or executors. (*Warnecke* v. *Lembca*, 71 Ill. 91).    The cases referred to by counsel for appellants are clearly distinguishable from the case at bar.    In *Harding* v. *Littledale*, 150 Mass. 100, it was held that the proceeds of a benefit certificate, after the death of a member, would go to his executor or administrator as a part of his estate; but there, under a special statute, a benefit association might insure a member for his own benefit; and, of course, in such case, when he died, the proceeds of the certificate would belong to his estate.    In *Union Mutual Life Ins. Co.* v. *Stevens*, 19 Fed. Rep. 671, the money, accruing on the policy at the death of the certificate

holder, was held to be assets in the hands of the administrator upon the ground that the assured himself appeared by name in the policy as the beneficiary. (*Kelly* v. *Mann*, 56 Iowa, 625; *McClure* v. *Johnson*, id. 620). In *Kelly* v. *Mann*, *supra*, where it was held that a policy of life insurance was not liable for the debts of the assured, but was collectible by his administrator, to be distributed by him according to law, the policy was payable to the "legal representatives" of the assured.

In the case at bar, where the policy or certificate is payable to "devisees, as provided in last will and testament," the proceeds of the certificate or policy might be regarded as belonging to the estate and liable for the debts thereof, if upon turning to the will, it had been found that the proceeds had been devised to the legal representatives of the estate of Benjamin F. Brooks, deceased, or to Alexander P. Petrie as the executor of that estate. By the terms of the third clause of the will, however, the devise or bequest—for the term "devisee" accompanying a bequest of personalty will be held to mean *legatee* (5 Am. & Eng. Ency. of Law,—1st ed.—p. 660)—is not to A. P. Petrie as executor, but to A. P. Petrie, individually, in trust for a certain purpose, without any designation of, or reference to, his representative capacity. The proceeds were devised or bequeathed to him in trust for the legal heirs named in the will, and to be disposed of in the following way, to-wit: "The principal to be kept at interest until the death of my wife, Ellen L. Brooks, or until my youngest child then living shall have attained the age of twenty (20) years should the death of my wife occur before the said child shall have attained that age, at the rate of eight per cent per annum, the interest or income to be paid to my wife, Ellen L. Brooks, quarterly." Such is not the language used in imposing duties upon an executor who is expected, as a general thing, by the terms of the statute, to settle up the estate at the expiration of a period of two years. The proof shows that the

Oct. '01.]THE PEOPLE v. PETRIE.511

youngest child of the testator, at the time of his death, was not more than three years of age. The proof also shows, that A. P. Petrie continued to pay interest on the "trust fund" to the widow, Ellen L. Brooks, for more than eleven years after he was appointed executor of the estate.

It is thus apparent that, by the terms of this will, A. P. Petrie was both trustee and executor. The declaration itself concedes the existence of this dual capacity by averring, that he never at any time filed a bond, or qualified, as trustee under said will, nor ever turned over the funds in his hands as executor to himself as trustee. The contention of the appellants is, that A. P. Petrie held the fund in his hands as executor from the time of his appointment as such by the county court in November, 1886, to the time of his death in December, 1898, a period of twelve years.

*Second*—The next question in the case is whether A. P. Petrie held the trust fund in question as executor, instead of holding it as trustee, upon the ground that having been, by the terms of the will, both trustee and executor, he never gave a bond as trustee; and upon the further ground that, even if the fund in question was not originally legal assets of the estate, yet it was in fact taken and treated as such by the executor; that, having thereby become assets in the hands of the executor, it remained such up to the time of the death of A. P. Petrie; and that, therefore, the bondsmen of the latter should be holden for it. There is much force in the position taken by the appellants in reference to this matter.

In his petition to the county court to be appointed executor, A. P. Petrie mentioned the proceeds of the benefit certificate as a part of the estate of which Benjamin F. Brooks died possessed. In his inventory presented to the county court, he also mentioned the insurance policy or certificate as a part of the estate of Benjamin F. Brooks. The bond, also, which he gave as executor, was

fixed in a sufficiently large amount to cover the proceeds of the certificate. It is to be observed, however, that, when he gave a receipt to the benefit association or insurance company for the amount of the policy, he signed the receipt in his individual name, and not as executor. It is also to be noticed that, although the amount of the widow's award exceeded the whole value of the personal property, owned by the deceased, excluding the certificate or policy, yet no amount was taken out of the proceeds of the certificate to pay such deficiency in the award. Nor was any part of the proceeds of the certificate applied towards the payment of any of the debts of the deceased, if there were any. It is true, that the first receipt, signed by the widow for interest on the trust fund, recites that such interest is "received of A. P. Petrie, executor of B. F. Brooks;" and that the sixth receipt, dated in May, 1888, executed by the widow for interest on the trust fund, recites that such interest is "received of A. P. Petrie, administrator of the estate of B. F. Brooks." These receipts, however, were not signed by A. P. Petrie, but by Ellen L. Brooks, the widow. Nor is there any evidence that they were drawn by A. P. Petrie. The fact, therefore, that he is described in one of them as executor, and in the other as administrator, is not significant, as indicating that he held the fund in the capacity of executor. If the receipts are important evidence upon this subject, the majority of them would indicate that the interest on the fund was not paid by him as executor, but on the contrary, as trustee, because the remaining sixteen of the receipts, commencing on February 18, 1887, and ending on August 18, 1898, all of which are signed by the widow, recite that interest on the "trust fund" of the estate of B. F. Brooks is "received from A. P. Petrie," thus designating him as an individual or in his capacity as trustee, and not in his capacity as executor.

The fact, that the executor mentioned the fund in his petition for appointment, and in his inventory, as being

a part of the property of the estate, has no other or different significance than if, in a report by him as executor, he had charged himself as executor with the trust fund in question. Such a charge, made by the executor against himself, has been held not to create a liability against the sureties upon his bond, if they were not otherwise liable under the law or the statute.

In *Clay* v. *Hart*, 7 Dana, (Ky.) 1, it was held that "the sureties of an executor cannot be made liable for funds, which the executor received as agent or trustee for a legatee, though he has charged himself with them in his executorial accounts."

In *Shields* v. *Smith*, 8 Bush. 601, it was held that the sureties of an administrator with the will annexed could not be held liable for funds which he received, not as administrator, but as agent for the widow and heirs, though he charged himself with such funds as administrator.

In *Commonwealth* v. *Gilson*, 8 Watts, 214, it was held, that the sureties in an ordinary administration bond are not liable for the proceeds of an intestate's real estate, though charged in the account of an administrator, as settled by the orphans' court.

Again, in *Pace* v. *Pace*, 19 Fla. 454, where the subject, out of which the suit arose was a contract of insurance made by a life insurance company, and where it was held, that the administrator would not hold the proceeds of the policy as general assets in his hands liable to the payment of debts or to distribution according to the law of the domicile of the intestate, it was said: "The sureties upon the bond of an administrator who has collected moneys, neither assets of the estate nor subject to distribution by him, and to which, as the legal representative of the decedent, he was not entitled, are not liable for any appropriation or use of the same by the administrator for his personal benefit."

In *Robinson* v. *Millard*, 133 Mass. 236, which case is referred to with approval by this court in *People* v. *Huffman*,

191—33

182 Ill. 390, the Supreme Court of Massachusetts said: "The fact, therefore, that the executors here saw fit to charge themselves in their general account with the balance remaining after payment of debts, legacies and charges, does not conclude the sureties under the general bond."

In *People* v. *Huffman, supra,* it was held by this court that the report of an executor, showing a certain balance in his hands as of the date of his report, is not conclusive on his sureties in an action to enforce their liability on the bond, when the report was not approved by an adjudication of the court. Therefore, under the authorities, it cannot be said that the circumstances relied upon by the appellants, as indicating that the fund in question was treated by the executor as a part of the assets of the estate, are conclusive upon the sureties so as to make them liable. The liability of a surety is *strictissimi juris.* (*People* v. *Toomey,* 122 Ill. 308).

The general doctrine is, as announced by Woerner in his work on the American Law of Administration, (vol. 1, —2d ed.—sec. 260), that, "where a will makes the same person executor and trustee, the executor's bond cannot be construed as conditioned for the performance of the duties belonging to the trustee; a separate bond should in such case be given as trustee." Citing only)

In *Hinds* v. *Hinds,* 85 Ind. 312, it was held that the bond of an executor, given to secure the faithful discharge of his duties as executor, cannot be construed as conditioned for the faithful discharge of his duties as trustee of a trust created by the will. This same doctrine was recognized and approved by this court in *People* v. *Huffman, supra,* where we said (p. 405): "Under the statute as it now stands, where a will makes the same person executor and trustee, the executor's bond cannot be construed for the faithful performance of the duties belonging to the trustee. A separate bond should be given by the trustee." As was said in *Hinds* v. *Hinds, supra,* it does not

follow from this doctrine, that the *cestuis que trust* need be without any security except the personal responsibility of the trustee for the faithful discharge of the duties of his trust, because a court of chancery has the power and jurisdiction to require the trustee in such a trust to execute bond with sufficient sureties conditioned for the faithful performance of the duties of his trust, and for the preservation of the trust fund.

*Third*—It is contended on the part of the appellants that, inasmuch as A. P. Petrie failed to file any report as executor, the plaintiffs below were entitled to nominal damages, and that the judgment should therefore be reversed and the cause remanded for this reason.

Upon this point we are content with what is said by the Appellate Court in their decision of this case, which is as follows (p. 663): "This point is purely technical, for, if we are correct in concluding this fund was not part of the estate to be accounted for to the county court, then the papers filed there by the executor showed he had turned over to the widow all the personal property of the estate; and the only report he could have made would have been to formally charge himself with said property and credit himself for its delivery to the widow; that is, to state in the form of a report only facts and figures already appearing in papers filed by the executor in 1886. Plaintiffs tendered various propositions of law, but none upon the subject of the right to recover nominal damages because of the failure to file a report. They moved for a new trial, and filed the points relied upon therefor, and did not assign failure to award nominal damages as one of them. They are restricted to the reasons they then assigned. Besides, courts will not award a new trial merely to enable a party to recover nominal damages." (*Comstock* v. *Brosseau*, 65 Ill. 39).

For the reasons above stated, the judgments of the Appellate Court and of the circuit court are affirmed.

*Judgment affirmed.*