B. Smith et al., Appellants, *v.* S. Sackett et al., Appellees.

APPEAL FROM WINNEBAGO.

Where A. and B. had made improvements on and were claimants of public lands, and desired to enter them at public land sale, and for that purpose applied to C. for a loan, which was refused, but C. agreed and did loan to his brother D. and took his note therefor the requisite amount, with directions to invest it for A. and B.'s accommodation, if the lands should prove satisfactory security, and D. accordingly entered said lands in his own name, and gave a bond for title upon payment in two years of the purchase price, interest, expenses, and pay for his time and trouble in the business, conditioned that A. and B. should pay D.'s note to C., in discharge to that amount of the bond, and that a failure on their part to take up said note should work a forfeiture of the bond : —
*Held*, that such a transaction was not a sale to A. and B. of the land, but a loan, and that D. sustained the relation of mortgagee to A. and B., and his lien was only a mortgage on the land.
*Held*, also, that upon the death of A., before the expiration of the two years, leaving a widow and infant child, who employed an agent to get an extension of the time, and at the same time the surrender by B. of the original bond to D., and abandonment of his rights thereunder, such surrender of the original bond by B. was no rescission of the contract as to A.'s heirs, and that a resale of the lands to the agent of A.'s widow did not affect the right of such widow and

Smith et al. *v.* Sackett et al.

heir. *Held*, also, that upon default of the agent on such resale to pay up according to her contract, and a resale again by deed to a third person, with notice, that A.'s widow and heir had a right to file their bill against such purchaser for her account of half the waste, damages, and rents only, the other half would belong to the defendant, the grantee of D., as B. had abandoned his right and interest in the contract to D., the grantor of defendant.

THIS was a bill originally filed in the Winnebago Circuit Court by the widow and infant child of Levi Moulthrop, deceased, to redeem the lands in said bill described, and for an account, &c. Afterwards the widow intermarried with Benjamin Smith, who is also made party complainant. The character of the bill sufficiently appears from the opinion. A decree was entered at the May term, 1854, SHELDON, Judge, which also appears in the opinion, and from which decree said complainants appealed.

SCATES, J. The same question is involved in this case that was decided in Miller et al. *v.* Thomas et al., 14 Ill. R. 428, Williams *v.* Bishop et al., post, and Davis et al. *v.* Hopkins, ante, p. 519, and that is, whether the transaction amounted to a loan of money. For if the loan is satisfactorily established, the plaintiffs here, who appealed from their own decree, may go into the inquiry they now make, whether the decree awards them all they are entitled to recover. If the loan is not established they are entitled to recover nothing, and however erroneous the decree might be shown upon the supposition of a loan, they could not reverse it, because greater wrong was not done by it to the defendants. The pleadings and proofs are very voluminous, and the questions raised are as numerous. I shall attempt a simplification, and state only the substance of so much of the pleadings, proofs, and points raised, as are necessary for the disposition of the cause according to our view of its merits.

I remark, therefore, that the bill is not framed to set aside the bond from S. Sackett to L. and E. P. Moulthrop, so far as any interest is secured to E. P. Moulthrop, for want of any interest in him, or consideration paid by him for the land. The complainants set up this bond, and claim under it. They cannot claim under it and avoid it at the same time. Levi Moulthrop may not avoid his own act, for want of consideration, to the prejudice of innocent third persons. He was a party obligee in this bond with E. P. Moulthrop, which shows as much interest in the one as the other. We must regard the interests as declared there, until a proper case is presented by sufficient allegations against E. P. Moulthrop and those claiming under him, to

set aside his claim for fraud or want of consideration. Another remark might apply here, and that is, that a want of consideration is allowed as a defence to executory contracts. It does not follow that it may be cause to set aside executed agreements or gifts as between the parties.

Under the allegations of this bill, which is really a bill to redeem from a mortgage, for in no other light in which we view it, is there any relievable equity shown, we shall treat it as an undivided estate in fee in L. and E. P. Moulthrop in the lands described in the bond. This view will divest the case of much of its complexity in the pleadings and proofs. For much of the proofs is introduced to show that E. P. Moulthrop had no estate in the land, and that defendants cannot claim under him. If it were a case of a resulting trust in equity, this question might properly enough arise. There is no pretence here, that the money belonged to L. Moulthrop, unless it became his by a loan. If there was no loan, the money belonged to S. Sackett; he purchased for himself, as he contends, and the lands were absolutely his. It only confuses the true inquiry, which is the question of loan, by going behind it, into an investigation of preëmption claims, settlements, and improvements, which can alone raise questions of abstract equities amongst occupants. These inquiries might lead rather to the fruitless result of showing to whom he ought to have loaned the money, than to whom he did loan it. Had the entry been made clearly as a loan, for the benefit of the true owner of a claim, improvement, or preëmption right, we might well inquire into the evidences of that ownership. But in this case no such rights or claims stood in the way to prevent any one from purchasing these lands of the government. S. Sackett attended the land sales and purchased them with money, which indisputably belonged to himself or B. Sackett, unless one or both had made it L. Moulthrop's or E. P. Moulthrop's, or the money of both, by loan.

If it were so loaned, the purchase would raise the trust, and put him in the relation of a trustee to the borrower, it is true, but in the character of mortgagee for the security of the money, if no other arrangements were made. The important inquiry here is, then, Was there a loan by S. Sackett or B. Sackett to either of the Moulthrops, or to them jointly? If it were a loan, the transaction will constitute a mortgage, and the bill will lie to redeem ; or, which is the same in effect, the lien the lender acquires is in the nature of a mortgage. And on the other hand, we must determine who were the borrowers, in order to know who were the proper parties to a bill to redeem.

We feel no difficulty in determining these questions upon the proofs before us, which show plainly enough the true character of this transaction, notwithstanding the witnesses contradict each other in giving their opinions and conclusions of that character.

The facts in relation to L. Moulthrop's improvements and claims upon the land, have their importance in connection with the application and negotiations with the Sacketts for a loan, and the manner in which they finally disposed of the matter by entering the lands. Benjamin Sackett refused to loan to the Moulthrops directly, but was willing and did loan the money, agreeing in amount with their wants, including the estimated expenses, to S. Sackett. And this was done with the intent of putting it in his power to accommodate, and accomplish their wishes to secure the lands at the approaching sales by the government, if he, upon further investigation, should think the lands a good and safe investment. He accordingly examined the lands, was satisfied, and purchased them in his own name. This was the only form in which he would agree the transaction should be conducted. This form of transaction has frequently been resorted to to cover and conceal loans and usury, but not always with success; indeed never, when the truth is accessible to proofs.

Immediately after the purchase of the government, S. Sackett executed a bond for a title to L. or E. P. Moulthrop upon either paying him within two years a sum of money which included his purchase price, his expenses, and pay for his time, with interest; and which, to that amount, might be discharged, by taking up his note to B. Sackett for this loan. The literal wording of the bond made a failure to take up this note a forfeiture. This transaction is claimed by defendants to be a sale. It was so called by Sackett, and he so answers. But this is, we think, his opinion and conclusion, that the mode adopted, the form given to it, and the name applied, had been successful in divesting it of the character of a loan. But we are not able to view it in this light. The Moulthrops had never sought for a purchaser of the government, to become a vendor to them. But they had sought for a loan of money to purchase themselves. And with this view, E. P. Moulthrop, at the instance of Levi, had gone to Connecticut, and applied to many for a loan. There he had applied to Benjamin Sackett, who brought about the transaction, as stated, with his brother S. Sackett, living in Ohio, but then on a visit to him. While S. Sackett has constantly denominated this transaction a sale, he has as uniformly declared that he did not want to speculate in it, and

has not, except in adding expenses, costs, and charges for time, at different times.

But subsequent transactions in relation to it throw additional light upon its true original character.

Within a year after the execution of the bond, L. Moulthrop died, leaving a widow and infant son. E. P. Moulthrop settled his estate without administering; and he and the widow executed mutual deeds of partition of the lands in the bond, and agreed that each should pay to Sackett their respective proportions of the amount due him. E. P. Moulthrop returned to Connecticut to live, and took the bond with him. Just before the money fell due, Mrs. Moulthrop gave a power of attorney to her mother, Ann George, and sent her to see Benjamin Sackett in Connecticut, for the purpose of obtaining an extension of the day of payment. He declined doing any thing in relation to it, on the ground that the Moulthrops owed him nothing, and that he held S. Sackett's note for his money. He agreed, however, that he would visit his brother S. Sackett, in Ohio, with her, to procure that extension, for which she paid him one hundred dollars. E. P. Moulthrop seeing no prospect of being able to pay his part, gave up the original bond to B. Sackett to take to S. Sackett. Mrs. George states, that part of the one hundred dollars to Benjamin was to make his interest on S. Sackett's note equal to ten per cent.; this Benjamin denies, however. When they applied to S. Sackett he refused to do any thing until he visited Illinois, and settled the judgment, costs, and expenses of a certain suit which had arisen on account of a mistake in the description of a tract of land connected with the transaction, which he was to convey to another man. He demanded all these expenses, those of his journey, and pay for his time, to be added to the amount due. Thereupon he extended the time for two years longer. B. Sackett had surrendered the original bond as directed by E. P. Moulthrop, but without the knowledge or assent of complainants.

S. Sackett would agree to no other form of extension than an absolute sale to Ann George in her own right, to which she assented. She says this was contrary to her wish, and he and his counsel say she required it. Be that as it may, he executed to her a contract accordingly. It may be, they supposed that in this mode it would effect a rescission of the bond as to L. Moulthrop's heirs. Ann George could take nothing to the betrayal of her principal, had she desired it. This second attempt to conceal the loan by a sale, is very similar in some respects to the other. It is composed as to the amount of the debt, interest, and accumulating expenses of travelling and pay for

time.  But although the bond had been surrendered by E. P. Moulthrop, and as now appears, in abandonment of his rights under it, yet there was no abatement of the amount of debt on that account, nor any disclosure of the surrender.  S. Sackett seems to have had but little confidence, however, in getting rid of L. Moulthrop's interest under the bond, for he made this sale subject to all equitable interests the parties might have under the bond.

After the expiration of these last two years, without payment, he sold and conveyed the lands in the bond to H. Miller, subject to whatever interests might exist under the bond.  Miller bought with notice, and so conveyed to G. C. Miller and Waterman.  They entered and took possession and made improvements upon part; and it is with them the account is sought for rents and damages for waste.

This fact has its weight, that in every step and stage of this transaction the two Sacketts carefully and fully estimate every expense they incur in relation to it, even postage, with full compensation for their time, and accumulating interest, and to these is added the costs and expenses of another transaction which incidentally arose out of this, and these sums are all demanded as due upon these lands.  This would be the conduct of a lender of money, in order to prevent expenses from consuming his interests and profits.  But it is very unlike the usual course of a vendor.  Few men could be found who would be persuaded to go into a distant State they had never visited, to buy a particular tract of land as an investment, and put and keep it in market four or five years on a fixed offer of cost and simple interest.  The Sacketts had had no purposes, previous to this application for a loan, to buy and sell, or invest in lands in Illinois; and no inducements were held out to them at this time by the Moulthrops.  The latter only sought to secure these lands for themselves; and that by a loan of the money to purchase them.

Though the loan was refused, in the usual form, on a note or mortgage, yet they made no particular objection to receiving it in the form of a bond for a deed from the lender.  It is very apparent, that Sackett preferred and insisted upon this form, under the impression that upon a failure of payment, it gave him the advantage of raising the amount by sale to another, supposing the form of the transaction conclusive evidence of its true character.  It was in this, if at all, he committed his mistake.  Courts will look behind, and outside of deeds, to ascertain whether they were intended as mortgages, although abso-

45 *

lute upon their face; and when that character is established, it will ever be treated as a mortgage.

Another fact strongly corroborative of this view of the character of the transaction is, the circumstance out of which the lawsuit and judgment referred to, arose. L. Moulthrop and P. J. Shumway had occupied and claimed parts of the same eighty acre tract, and agreed to secure each his part, that one should enter it and convey to each his part. This tract was, therefore, included in the arrangements with Sackett. He entered it in his own name, as the other tracts; and afterwards conveyed Shumway his part. A conveyance of it was delayed, however, by a mistake in the numbers in the certificate of entry. Shumway sued on account of this delay, and obtained the judgment; and the costs and expenses of this suit were afterwards added to the amount due from the Moulthrops. When the mistake was corrected, Sackett conveyed to Shumway his part of this tract in pursuance of the agreement, and in satisfaction of the debt recovered in the judgment. So far from speculating or investing in these lands, we find Sackett entering the precise tracts and parts of tracts which Moulthrops claimed, and desired to purchase. And the plans of Moulthrops to this end were carried out by this purchase of Shumway's part of a tract. This tends strongly to show that while Sackett furnished the money for Moulthrops, and took the title to himself to secure repayment, yet he was, as to the property he bought, entirely controlled by Moulthrops as his principal. It does not appear that he bought any other property than the tracts they desired, and this of Shumway, to secure part to Moulthrops.

Again, when the Sacketts are applied to for an extension of credit on the debt, Benjamin receives $100 for his services, &c. in the matter, and S. Sackett adds to the amount the costs, &c. of the judgment, and his time and expenses in going to settle it, and then, instead of extending the credit on that debt, he sells the premises to another, as he says, upon two years' credit. What Mrs. George did in the matter was done as agent of L. Moulthrop's widow, and this agency was made known to the Sacketts. Knowing her agency, they could hardly be excused, in good faith, to consent to an independent sale to the agent buying in violation of her duty; and that sale upon the very terms upon which the principal was willing to receive an extension of credit. This position is not sustainable for fair dealing; it is an evasion.

Again, he calls and treats the transaction with Moulthrops as a sale for favor to them. Something more should be shown

than the bare facts of it, before we can credit him with this as the only motive. While on a visit to his brother in Connecticut, he is accidentally made acquainted with the fact of Moulthrops' application to borrow money of Benjamin, and that Benjamin would not lend it to them, but would lend it to him for the purpose of their accommodation. The cautious prudence of this is very apparent. Benjamin was not willing to rely upon their representations about the property. He was not able to visit and examine for himself, so as to judge of the property and safety of the investment. Simmons Sackett lived in the west and could examine the lands. He was acquainted with western lands. If he would, in the mean time, become responsible for the money, it could be had, and be taken along. Simmons had expressed no wish to borrow money or buy lands at the land sale in Illinois. Yet we are told by him, and asked to believe, that as a mere matter of favor, he borrowed this money, went to Illinois and bought these lands for the simple object of selling them to Moulthrops at cost, with the same interest he was paying on the purchase-money. This is the explanatory motive of a business transaction. It would have been more satisfactory, had the Moulthrops been shown to have sustained that relation, which is recognized in law as a good consideration. But none such is shown. In a business light, a loan, on the contrary, fully explains the motive. Benjamin had money to loan at interest merely, when satisfied with the security. Not being able to examine this, it is put into the hands of Simmons upon his note, at the time asked on the loan by the Moulthrops. He was to examine, and did examine the security, and was satisfied, and bought the lands, keeping the title as a security, and giving a bond for title. In this he accommodated his brother by investing his money for him; incurred no expense to himself by it, but was to be paid for his time and trouble.

Viewing the transaction in this light, we deem the exceptions to the depositions as unimportant. We may totally disregard the depositions excepted to, and still, under the bond, we think the heirs of L. Moulthrop estopped from denying any interest in E. P. Moulthrop; and without the bond, we should find it difficult to support the decree finding a loan.

If E. P. Moulthrop, then, had an interest, it is quite immaterial to complainants who now owns it. They can only ask to have their own rights established. This is done by the decree to an undivided moiety of the lands in the bond. This is all we think them entitled to recover.

In making up the account, defendants are treated as owners of E. P. Moulthrop's interest by conveyance from S. Sackett.

With this we see no reason of complaint from complainants. There are sufficient proofs of a cancellation of the bond by E. P. Moulthrop, as to himself, by surrender and abandonment, to sustain defendant's title to the unpaid purchase-money due from complainants, in taking the account.

The 8th assignment of error complains of a direction the court gave the master in taking the account. We do not find the error complained of in the decree. We find the word [ " half " ] thus bracketed into the sentence of direction, and the account is stated according to what it would so direct with it in.

The account so stated does equity and justice to both parties, by taking " from the amount of [ half ] such principal and interest," to wit, the purchase-money due on the bond, " half the amount of waste, damages, and rents," &c.

The investigation before the master was elaborate and minute in its details; was conducted upon fair and equitable principles; and we see no apparent reason to disturb the decree for its approval and adoption, especially as its result is as favorable to complainants as they have rights to demand.

The rights of dower can extend only to the same lands in the proportion and to the extent of her husband's interest. That is found to be an undivided moiety, and to this exten; the decree awards her dower.

*Decre · affirmed.*

NOTE. Defendants submitted a motion for leave to assign · ross errors upon this record. To this complainants objected.

No precedent for allowance of such a motion against the c nsent of plaintiff under such circumstances as here presented, having been shcwn us, we deem it best not to create one, and, therefore, deny the motion.