# GARDNER P. COMSTOCK

*v.*

# LOUIS P. BROSSEAU *et al.*

1. VENDOR AND VENDEE—*right to declare forfeiture.* Where an executory contract for the sale and conveyance of real estate gave the vendor an option to declare a forfeiture of the contract and all payments made, on failure of the vendee to meet any of the deferred payments, or breach of any of his covenants: *Held,* that the vendor could not rightfully declare a forfeiture of the contract, and at the same time retain the notes of the vendee, given for the deferred payments. He should surrender, or offer to surrender, such securities.

2. SAME—*right to resume possession.* Where the plaintiff, holding the legal title to certain mill property, by an executory contract, sold the same to A and B, taking notes for the unpaid purchase money, reserving the right to declare a forfeiture of the contract for non-payment, and after two of the notes matured, the vendor, without having declared a forfeiture, took possession, claiming that B surrendered the possession to him: *Held,* that, not having declared a forfeiture, he had no right to resume possession without the consent of the vendees; and that even if B had given such consent, it could not affect the rights of A, and the most that the vendor could claim was to occupy the premises as a tenant in common with A.

3. TRESPASS—*when the damages must be shown.* The plaintiff, holding the legal title to mill property, bargained for the sale of the same to A and B, taking their notes for the unpaid price, reserving a right to forfeit the contract for non-payment of any of the notes. Default was made by the vendees, in not paying the two first notes when due. The vendor then took possession of the mill, claiming that B had assented to it, but which was denied. At this time, the vendor had not declared any forfeiture, and was not in a position to do so, he not having surrendered, or offered to surrender, the notes. He continued in possession about 12 days, when A, finding no one in the mill, re-entered. The vendor sued him and his servants in trespass. The jury found for the defendants, and this court affirmed the judgment on such finding; there being no injury shown to have been committed by the defendants to the person or property of the plaintiff, and the court holding that if B surrendered his possession, that only gave the plaintiff the right to possession jointly with A.

4. NEW TRIAL—*trespass—to recover vindictive or nominal damages.* It is a well settled rule of practice in this State that a new trial will not be

awarded to enable a party merely to recover vindictive or nominal damages.

5. Trespass—*right of an intruder in possession.* Where a party obtains the actual possession of real estate wrongfully, and such possession is invaded by one having a right to possession, the wrongdoer in such case can not recover for any injury done to the real estate; but if the party is forcibly ejected, his person injured, or any injury done to his personal property upon the premises, he may recover even as against the owner, and this whether the plaintiff's possession was rightful or not.

Appeal from the Circuit Court of Kankakee county; the Hon. Charles H. Wood, Judge, presiding.

This was an action of trespass, brought by the appellant, against Louis P. Brosseau, Joseph Zace and John B. Martin, for forcibly breaking and entering the mill claimed by the plaintiff. The plaintiff held the legal title to the premises, as security for moneys advanced by him for the real owners, Martin and others. Before the alleged trespass, the property, by an arrangement of the several parties in interest, was sold to John B. Martin and Louis P. Brosseau, for $9898.37, of which sum $4000 was paid at the time, and the balance was to be paid as follows: $1000, in eight months; $1200, in one year; $1237.74, in two years; $1232.74, in three years, and $1227.71, in four years, according to the tenor and effect of five promissory notes, bearing interest at the rate of ten per cent per annum, the interest to be paid annually.

A contract for the sale of the mill property was executed by the plaintiff, Comstock, and Martin & Brosseau, which provided for a conveyance upon payment of the notes. The contract further provided: "It is severally agreed between said parties that, in case of the failure of either party to perform the above provisions of this contract, they shall be liable for, and pay to the other party, all the damages resulting from such failure; and in case of failure of the said party of the second part to make either of the payments, or perform any of the covenants on their part hereby made and entered into, this contract shall, at the option of the party of

the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part, in full satisfaction and in liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid."

Mr. JAMES N. ORR, for the appellant.

Mr. W. H. RICHARDSON, for appellee Martin.

Mr. J. BROSSEAU, for the other appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action of trespass, brought by the appellant, against the appellees, in the Kankakee circuit court.

The alleged trespasses consisted of breaking in a window and entering a mill, claimed, at the time, to be in the possession of the appellant, and in damaging personal property therein situated.

On the trial, the appellees were found not guilty. There can be no question the finding as to Martin was correct. Indeed no other verdict as to him, in any view, could be permitted to stand. He was not present, and the weight of the evidence is that he neither advised nor encouraged the committing of the acts that were done.

The only doubt that can arise in the case is as to the guilt of Brosseau. The other appellee, Zace, was simply a hired man, and if the entry of Brosseau can be justified, he can justify under him.

The mill, which is the subject of this controversy, was built by Brosseau, his brother and a Mr. Owens. The last named parties sold their interest to John B. Martin, Jr., and thereupon the contract shown in evidence was executed. It is an agreement that the appellant will convey the mill property to Brosseau & Martin, on their compliance with its

42 . COMSTOCK *v.* BROSSEAU *et al.* [Sept. T.,

Opinion of the Court.

terms. It provides for a forfeiture, in case of non-performance, at the option of the appellant. The contract bears date the first day of March, 1869, and recites that Brosseau & Martin had executed and delivered to appellant their five promissory notes, payable respectively in eight months, one, two, three and four years thereafter, amounting, in the aggregate, to $5898.37; all of which were to be paid before the conveyance was to be made. The lots on which the mill had been erected cost about $720, and the principal part of the indebtedness secured on the property, seems to have been for borrowed money, the appellant holding the legal title as security.

Previous to, and at the making of, the agreement, Brosseau & Martin had been in the exclusive possession of the mill, and so continued up to the 18th day of October, 1870.

On that day, appellant insists, the mill being unoccupied, Martin gave him the keys, and surrendered the property to him. This, Martin explicitly denies. It is not pretended that Brosseau consented to the surrender. The books, and some articles of personal property belonging to the firm, still remain in the mill. At all events, on that day the appellant, either with or without the consent of Martin, did take possession of the mill, and ran it up to the morning of the 30th of October, when Brosseau, finding no one in it, re-entered and took possession.

At the date of these transactions, only two of the notes mentioned in the agreement had become due, neither of which, however, had been paid, but the appellant had not chosen to exercise his option to declare the contract forfeited for non-payment.

On the 19th day of October, the next day after he took possession of the mill, he gave Brosseau & Martin notice, in writing, unless all arrearages and damages were paid within 30 days from the service of notice, he would declare a forfeiture, and determine all their rights under the contract. No forfeiture had then been declared, and if payment should be

made within the time fixed by the notice, none could be. It may be added, the appellant was in no position, at the time he took possession of the mill, as he says, to put an end to the contract. He still held the unmatured notes, and had not previously offered to surrender them. He could not rightfully declare a forfeiture and at the same time retain these negotiable securities. *Staley* v. *Murphy*, 47 Ill. 241.

The evidence is quite conflicting as to whether Martin ever gave the appellant permission to take possession of the mill; but whatever he may have done, it is apparent that it could not affect the rights of Brosseau. One obligee in a bond conveying real estate can not surrender the interest of another without his consent. *Smith* v. *Sackett*, 15 Ill. 528; *Ruffner* v. *McConnel*, 17 Ill. 212.

If it shall be admitted the appellant was lawfully in possession of Martin's interest in the property, the utmost that could be claimed for him is, that he would be a joint tenant with Brosseau; and it would be absurd to hold that one joint tenant can deprive his co-tenant of all participation in a common right, or maintain trespass against him for entering upon his own property, where no violence is used. *Jamison* v. *Graham*, 57 Ill. 94.

If we shall regard the possession of appellant as exclusive, still he was himself a mere intruder and a wrongdoer. The right of property remained in Brosseau & Martin. Their interests had never been cut off by any declaration of forfeiture, if indeed they could be terminated at all in that way. No matter what may have been the rights of Brosseau, he could not forcibly eject the appellant, whether his possession was rightful or not. *Reeder* v. *Purdy*, 41 Ill. 279.

The ownership of the property remaining in Brosseau & Martin, the appellant in no event could recover for damage to the realty itself. He could only recover such damages as may have directly accrued to him from injuries done to his person or property through the wrongful invasion of his possession, and such exemplary damages as the jury might

see proper to award.    The principle is that a party who has no title to premises can not recover for an injury done by him who hath the title.    *Hoots* v. *Graham*, 23 Ill. 82; *Reeder* v. *Purdy, supra.*

In this case, there was no injury to the person, and no actual damage to personal property; and under the most favorable view of the law for the appellant, he could only recover nominal and such exemplary damages as the jury might see fit to give him for the technical invasion of his possession.    It is a well settled rule of practice in this State that a new trial will not be awarded to enable a party merely to recover vindictive or nominal damages.    *McKee* v. *Ingalls*, 4 Scam. 33; *Johnson* v. *Weedman*, 4 Scam. 497.

No error appearing that could materially affect the merits of the case, a majority of the court are of opinion the judgment must be affirmed.

*Judgment affirmed.*