Thisler v. Hopkins.

---

## Otis L. Thisler v. Archibald W. Hopkins.

1. IMPLIED WARRANTY—*Where a Contract Expresses the Conditions of a Sale.*—Where a contract in writing expresses the conditions of a sale, a warranty not included therein can not be implied.

2. NEW TRIALS—*To Enable a Party to Recover Nominal Damages.*— It is settled doctrine in this State that courts will not reverse a judgment and award a new trial simply to enable a party to recover nominal damages.

Assumpsit, upon a written stipulation of the facts. Trial in the Circuit Court of Putnam County; the Hon. THOMAS M. SHAW, Judge, presiding. Finding and judgment for defendant; appeal by plaintiff. Heard in this Court at the May term, 1899. Affirmed. Opinion filed October 12, 1899.

FRED T. BEERS, attorney for appellant.

A vendee may treat a warranty of quality as a condition subsequent, and upon discovery of its breach, rescind the contract or treat it as at an end and recover the price paid by him. Dorr v. Fisher, 1 Cush. (Mass.) 274.

And the vendee may return the thing without unwarrantable delay, and this will rescind the sale and he may recover the price if he has paid it. 1 Parsons on Cont. 592.

And where a general warranty is relied upon it is not necessary in the pleading to state if it is express or implied. Hoe v. Sanborn, 21 N. Y. 552 78; Am. Dec. 163.

WINSLOW EVANS, attorney for appellee.

The written contract set out in the stipulation alone expresses the contract of the parties as to the sale of the jack " Fortune," and no warranty as to the quality or condition of the jack, not included therein, can be implied. Robinson v. McNeill, 51 Ill. 225; Van Ostrand v. Reed, 1 Wend. (N. Y.) 424; DeWitt v. Barry, 134 U. S. 306; Seitz v. Brewers Refrigerating Co., 141 U. S. 510; Titley et al. v. Enterprise Stone Co., 127 Ill. 457.

The burden was on the plaintiff to show that the jack proved barren on two seasons' trial, and that after such trial he had been returned to the stables of Hopkins in good health and condition, and that after the performance of these conditions, Hopkins had refused to furnish him another good jack or what such "good jack" at such time and place was reasonably worth in the market. 1 Greenleaf on Evidence, Sec. 74; Sutherland on Damages, Secs. 438–441.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

This was an action of assumpsit, tried by the court below upon a written stipulation of facts, a jury having been waived.

The court found the issues for appellee (defendant below) and rendered judgment against appellant in bar of

the action and for costs, and he brings the cause to this court.

The controversy arises out of a transaction between the parties, wherein appellee sold to appellant a male animal, commonly called a "jack," for breeding purposes, at the same time delivering to appellant a bill of sale of which the following is a copy:

"BILL OF SALE.

Know all men by these presents, that I, A. W. Hopkins, of Granville, Ill., have this day sold to O. L. Thisler, of Chapman, Kansas, Fortune, the two-year-old black jack, white points, for and in consideration of $600, the receipt whereof is hereby acknowledged.   In case the above jack proves barren, with careful handling, upon two seasons' trial, on the return of said jack to my stable in good health and condition I agree to furnish the purchaser with another good jack.   In witness whereof I have hereunto set my hand and seal this 31st day of December, 1892.

A. W. HOPKINS.   (SEAL.)

It appears from the stipulation that appellant gave his note for the purchase price of the jack and has since paid the same; that the animal was delivered to appellant and by him taken to his farm in Dickinson county, Kansas, and that within a few days thereafter he was sold by appellant to a third party residing within one hundred miles of appellant's farm; that the last mentioned purchaser kept the jack for breeding purposes during the season of 1893, and used all reasonable care required by such animals kept for breeding purposes, and that the jack would serve but ten mares during the season, and refused to serve more, and got five or six mares with foal; that the owner tried to use said jack for breeding purposes during the season of 1894, but that he refused to serve mares during that season, and that thereupon, in accordance with the contract between them, the purchaser from appellant returned the jack to the latter; that appellant then tried to use the animal for breeding purposes, but he still refused to serve mares, and appellant thereupon wrote to appellee stating the above facts, and appellee replied that the refusal of "Fortune" to serve mares was but a temporary affair, owing to his youth; that

appellant again wrote to appellee stating the facts in regard to the jack, and requesting him to take back the animal and refund the $600 paid for him. In reply appellee sent a letter, of which the following is a copy:

"PERU, ILL., April 13, 1894.

O. L. THISLER.

DEAR SIR: I agreed to furnish you another jack if the jack sold was barren. This agreement is not assignable by you to any one so as to obligate me. I will not consider the question of taking him back.

Yours truly,

A. W. HOPKINS."

Thereupon appellant shipped the jack to appellee, who refused to receive him as returned under the contract, but allowed appellant to leave him there as the property of the latter and at appellant's risk. The animal stayed at the farm of appellee for several weeks, and, with the aid of a "jenny," was used for breeding purposes, and served eleven mares between May 10, 1894, and the latter part of July, 1894, when appellee shipped him back to Kansas, to appellant. It is stipulated that appellant paid in all $112 transportation charges in shipping the jack to Illinois and back to Kansas; that appellant has retained the animal at his farm in Kansas ever since his return thereto, where he has been unable, and has refused to perform any service with mares, and has not got any foals. It is further stipulated that shortly after the jack was delivered to appellant at his farm in Kansas, there was a great depression in the markets of the United States generally of all animals held and used for breeding purposes, and particularly was this true of jacks; and that the jack in question, if a good foal getter, to-day would not be worth, and is not worth, more than the sum of $100.

The question for us to determine is, whether, upon the facts stated in the stipulation, appellant is entitled to recover. Appellant's contention is that he is entitled to recover, as upon an implied warranty of the jack, not only the $600 paid therefor but also the $112 paid for transportation charges, as damages. We think the bill of sale must be held

to constitute the contract between the parties, and that in the face of the written instrument there was no implied warranty. The extent of appellee's liability under the contract was, that if the jack sold should prove barren after a fair trial for two seasons, then on his return to appellee's stable in Putnam county in good health and condition he would furnish appellant another good jack. It can not be said the jack proved entirely barren, because the stipulation shows he got five or six mares with foal the first season and served eleven mares the second season, the result of which does not appear; and while his procreative powers do not seem to have been as strong as perhaps appellant was led to expect, yet the jack certainly was not barren. Before appellant had any opportunity of testing the animal's powers for breeding purposes, he sold him to a third person; but as to what he got for him, or what, if anything, he paid back to the purchaser when the jack was returned, the stipulation does not show. We are of the opinion the return of the jack to appellee before the end of the second season was premature, and appellee was not bound to receive him. Had the jack proven barren, the contract required his return to the stable of appellee in good health and condition. We think the mere putting the animal on board the cars in Kansas and shipping him to appellee was not a compliance with that condition. But, since July 18, 1894, the jack has been in the possession of appellant, on his farm in Kansas; and while it is contended he is in a condition as if tendered May 10, 1894, we can not so regard it. According to the stipulation, May 10th would be in the middle of the breeding season in Kansas, which, as we have said, was too soon to make a tender of the jack under the contract; and since he was returned to Kansas there has been no attempt to deliver the animal at appellee's stable in Putnam county.

If appellant were entitled to recover at all, it would only be the value of another good jack, and there is no proof in the record as to what another good jack was or would be worth.

True, it is stipulated that if the jack "Fortune" were a

good foal getter he would not be worth more than $100, but we think that is hardly sufficient to show the value of another good jack.

Counsel for appellant himself, in his reply brief, says that this clause of the stipulation is meaningless and has no bearing on the issues of the case, and in this connection we are disposed so to regard it.

Notwithstanding the omission of proof as to the value of another good jack, still, if a breach of the contract were clearly shown, it might entitle the plaintiff to nominal damages; but it is settled doctrine in this State that courts will not reverse a judgment and award a new trial simply to enable a party to recover nominal damages. (Comstock v. Brosseau et al., 65 Ill. 39.)

We think there was no error in the rulings of the court on propositions of law, and the judgment must be affirmed.