The People etc., use of, et al. v. Richard S. Petrie et al.

1. BENEFICIARY ASSOCIATION—*Testamentary Directions as to Benefits.* —Where a beneficiary certificate provided for paying one assessment not exceeding $5,000, upon the death of the certificate holder, " to his devisees, as provided in last will and testament, or in the event of their

The People v. Petrie.

prior death, to the legal heirs or devisees of the certificate holder," and the certificate holder by his will gave the proceeds of the certificate to a trustee in trust for his legal heirs after first keeping the fund at interest till his wife died and his youngest child became twenty years of age, and paying such interest to his wife, and the same person appointed ∘trustee was also made executor of the will, *held*, that the fund was not assets of the estate, and the executor, as such, was not entitled to it.

2. SAME—*Acts of the Executor, When Not Conclusive.*—The acts of the executor in describing the certificate as part of the estate in his petition for letters and inventory are not conclusive that he received them as executor, and the sureties on his bond as executor are not liable for the trust fund.

3. SAME—*Death of the Trustee before the Time for Distribution.*—As the time for the distribution of the fund had not arrived, though the trustee has died, this did not authorize the widow and children to sue for and collect the fund, but in such case another trustee should be appointed to recover and invest the fund.

4. APPELLATE COURT PRACTICE—*As to Errors Not Assigned as Grounds for a New Trial.*—Where, in debt on bond, plaintiffs in their written motion for a new trial did not assign as a ground therefor failure to award plaintiffs nominal damages, they will not be heard to assign that point as error on appeal.

5. NEW TRIALS—*Not to be Granted to Enable a Party to Recover Nominal Damages.*—A new trial will not be granted merely to enable a party to recover nominal damages.

Debt, on a bond. Appeal from the Circuit Court of Mercer County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed April 11, 1901.

Statement.—Benjamin F. Brooks was the owner and holder of a beneficiary certificate in the Covenant Mutual Benefit Association of Illinois. It provided that upon his death while a member an assessment should be levied upon the surviving members and the aggregate sum collected, not exceeding $5,000, should be paid as a benefit " to his devisees, as provided in last will and testament, or in the event of their prior death, to the legal heirs or devisees of the certificate holder." Brooks died October 20, 1886, leaving a last will, executed August 18, 1886, which was duly admitted to probate. The body of the will was as follows :

" First. I give and bequeath to my wife, Ellen L. Brooks, the income that may be derived from the whole of my estate, both real and personal, during her natural lifetime, for the

support of herself and my minor children under sixteen years of age, to be accepted and received by her in lieu of dower.

Second. ·That at the death of my wife, Ellen L. Brooks, my youngest child then living having attained the age of twenty years, or in case of her death before my youngest child shall have attained the age of twenty (20) years, then when my youngest child then living shall have attained the age of twenty years, the whole of my estate, after deducting two hundred dollars, shall be divided equally between my sons, Elmer O., Frank S., Clarence E. and Rolla W., and my daughters, Mary E., Fannie J., Genevra and Eunice E. Brooks, share and share alike.

Provided, that the sum of two hundred dollars be paid to my daughter, Eunice E. Brooks, in addition to her share, if she should be afflicted with any permanent disease; in case she should not be so afflicted then the two hundred dollars as above directed to be deducted from my estate shall be divided equally between my said sons and daughters as above set forth.

Third. I give and bequeath to A. P. Petrie, in trust for my legal heirs before named, the proceeds of one certain certificate of life insurance in the Covenant Mutual Benefit Association of Galesburg, State of Illinois, numbered 620, for the sum of five thousand dollars, which I have made payable to said A. P. Petrie to be disposed of as follows, to wit: The principal to be kept at interest until the death of my wife, Ellen L. Brooks, or until my youngest child then living shall have attained the age of twenty(20) years, should the death of my wife occur before the said ·child shall have attained that age, at the rate of eight per. cent per annum, the interest or income to be paid ʼto my wife, Ellen L. Brooks, quarterly. And I further direct that the said A. P. Petrie sell my tools, shop and all my estate of every name and nature whatsoever and pay the amount over to my wife, Ellen L. Brooks."

The will appointed A. P. Petrie guardian of testator's children under fourteen years of age, and executor of the will, and in case of his inability to act appointed R. S. Petrie in his place. ·A. P. Petrie filed in the County Court a petition for letters testamentary, in which he stated that Brooks died possessed of personal estate, "consisting chiefly of an insurance policy amounting to $5,000, all of said personal estate being estimated to be worth about $5,000." The County Court granted the prayer of the petition, fixing the

penalty of the bond to be given at $10,000, and A. P. Petrie filed a bond in that penal sum, conditioned as prescribed in section 7 of the administration act. This bond was approved, and letters testamentary were issued to A. P. Petrie on November 28, 1886, and he entered upon his duties as executor. He then filed an inventory in said estate, the main article of personal property enumerated being " One certificate of life insurance in the Covenant Mutual Benefit Association of Illinois, value $5,000." Afterward he received $5,000 from the association, and issued to it the following receipt therefor :

" GALESBURG, ILL., Feb. 11, 1887.

Received of the Covenant Mutual Benefit Association of Illinois five thousand dollars, in full of all claims under and to the within certificate of membership, number 620, on the life of the late Benjamin F. Brooks, and hereby surrendering all my right, title and interest under and to .the same, and releasing said association from all liability ; also warranting and defending said payment against any and all claimants.

[SEAL.]                                    A. P. PETRIE. "

After receiving this money A. P. Petrie made numerous payments to Mrs. Ellen L. Brooks, the widow, and took from her eighteen receipts, which specified the payments as " interest on trust fund," " interest on trust fund of the estate of B. F. Brooks," or " interest on trust fund of B. F. Brooks." The first receipt read, " Received of A. P. Petrie, executor of B. F. Brooks; " the sixth read " Received of A. P. Petrie, administrator of the estate of B. F. Brooks; " and all the rest " Received of A. P. Petrie." The last receipt was dated November 18, 1891, and specified that it paid the interest to February 18, 1892. Thereafter he paid her various sums during the years 1893 to 1898, inclusive, aggregating $1,452.50, the last payment being on November 19, 1898. For these payments no receipts appear. A. P. Petrie died December 5, 1898, without having made further payments of interests or any of the principal sum to any one; and without having filed any report as executor, and without being discharged as executor.

This is an action of debt brought in the name of the people for the use of the widow and children and guardian of the minor children of B. F. Brooks against the sureties upon the official bond of A. P. Petrie as executor of said estate. The declaration set out the facts very fully, and averred A. P. Petrie received said $5,000 upon said certificate as executor, and at and since that time said sum had been in his hands as executor. The breaches assigned appear to be substantially as follows: First, that Petrie received said fund of $5,000 from the Benefit Association as executor, and since that time has held said fund as such executor; but that he did not pay said fund or any part thereof to said widow or children, but wasted the same and converted and disposed of it to his own use. Second, that Petrie did not render fair and just accounts of his acts as executor to the county court, but failed and refused so to do. Defendants demurred to the first breach, and the demurrer was overruled. They then filed four pleas. The first was to the second breach, and averred Petrie did make and tender a fair and just account of his acts as executor. The remaining pleas were to the first breach. The second plea averred Petrie did not have or hold said moneys as executor at the time of his death or at any other time. The third plea averred Petrie did not receive said moneys as executor of the will of Benjamin F. Brooks from the Benefit Association, as alleged in the declaration and first breach. Issues were joined upon these pleas. The fourth plea averred that Petrie in his lifetime paid Ellen F. Brooks a large sum, to wit, $5,000, which exceeded the interest received for said sum, in full satisfaction and discharge of all interest received upon the same. Plaintiffs replied denying payment of said money in discharge of all interest mentioned, as alleged in the plea. Issue was joined upon this replication. A jury was waived and the cause tried. The issues were found for defendants. Plaintiffs moved for a new trial, and that was denied, and judgment was entered against them for costs. The widow, children, and guardian prosecute this appeal.

James M. Brock and W. J. Graham, attorneys for appellants.

Guy C. Scott and Bassett & Bassett, attorneys for appellees.

Mr. Justice Dibell delivered the opinion of the court.

The first question is whether under the certificate and the will the funds received from the association were assets of the estate, to which the executor as such was lawfully entitled, and upon which it was his office and duty as executor to administer. The promise in the certificate was to pay the fund " to his devisees, as provided in the last will and testament, or in the event of their prior death, to the legal heirs or devisees of the certificate holder." These identical words in a certificate issued by this association were held in Covenant Mutual Benefit Association v. Sears, 114 Ill. 108, to mean that the money should be paid to the devisees if there were devisees to take it, and if there were no devisees, then it should be paid to the persons who answered the description of heirs. (Covenant Mutual Benefit Association v. Hoffman, 110 Ill. 603.) Alexander v. Northwestern Masonic Aid Association, 126 Ill. 558, involved a certificate payable to the devisees or heirs at law of the deceased member, and there was no will and no devisee, and the controversy was who took the fund. The court said it was conceded (and it evidently approved the position), that the fund was not assets belonging to the estate of deceased, which would pass to the administrators, to be used by them in payment of debts and in the settlement of the estate, but it should be paid to the person or persons named in the certificate. The court said:

" If Alexander had executed a will, and therein devised the fund to a person or persons therein named, such person or persons, beyond all doubt, would have been entitled to the fund."

Alexander left a widow and next of kin, but no children. It was held the fund was personal property and the widow was as to it the sole heir, and took the entire fund by virtue

of the terms of the certificate.   In Hubbard v. Turner, 93 Ga.
752, under a life policy payable to the heirs or assigns of
the assured, it was held that though the question who
answered the description "heirs" was to be ascertained by
reference to the statute of distributions, yet the persons so
determined to be the heirs became beneficiaries and took
their interest by virtue of the contract embraced in the
policy, and not by virtue of the statute, and they took the
avails of the policy as purchasers, and not as distributees
of the estate of deceased; and that the proceeds of the pol-
icy were no part of the estate of the assured, and were not
subject to the claims of his creditors.   The authorities are
collected in a note to that case in 30 L. R. A. 593.   Under
these authorities if Brooks had died intestate this fund
would have passed to his heirs, his widow and children, and
not to his administrator.   By the third paragraph of his
will he gave the proceeds of the certificate to A. P. Petrie
in trust for his legal heirs named in a prior paragraph.
We find no language in this will indicating a purpose that
this insurance should be paid to the executor as such, and
become assets of the testator's estate in the hands of his
executor, and subject to the claims of creditors.   The con-
cluding words of the third paragraph, directing Petrie to
sell testator's tools, shop, and all his estate of every name
and nature, and pay the amount to testator's wife, do not
seem to us to support the contention of appellants.   He
certainly did not intend the certificate should be sold or the
proceeds thereof paid to his wife, and yet he there directed
all his estate of every name and nature (the strongest
words possible), should be sold and the proceeds paid to his
wife.   It is argued that the first and second paragraphs
show testator supposed himself to be thereby disposing of
a considerable estate, and as the will was made only a little
over two months before testator's death, and the inventory
showed he left no real estate, and the personal property
was appraised at only $327, he must have meant by those
paragraphs to treat this certificate as part of his estate.
The proofs do not advise us what property Brooks had

when he made the will, nor whether it was made in expectation of death, or when he had apparently a long life yet before him. By the first paragraph he disposed of the income of his real estate, and undertook to compensate his wife for her dower therein, yet he left no real estate. We do not think his efforts in the first and second paragraphs to dispose of an estate apparently larger than he had at the time of his death can overcome the explicit terms of the third paragraph by which he bequeathed the proceeds of this certificate to Petrie upon certain trusts herein expressly set forth.

As we view the third paragraph it was a bequest of this fund to Petrie as an individual, to hold, invest and distribute in compliance with the trusts therein stated. If he had refused to qualify as executor, still he could have collected the fund. An administrator with the will annexed could not have collected the money. No creditor of Brooks had a right to compel a resort to this fund for the payment of his claim. If Petrie had reported this fund to the County Court as executor and paid it out upon claims against the estate, we are of opinion he would still have been accountable therefor personally to the *cestuis que trust* at the period of distribution. The County Court had power to remove Petrie from his office as executor. We are of opinion it had no power to take this trust estate from him, or to direct him in the manner of its investment or distribution, but that this could only be done by a court of equity, which latter tribunal could have required of him a bond before receiving the fund, and should have been called upon to do so. Testator's youngest child was three years old when this will was made, so that he contemplated the fund arising from this certificate might be invested and put at interest for at least seventeen years, and still longer if the widow lived longer after his death. The investing of a fund and keeping it at interest for seventeen years or longer, and paying the interest to a beneficiary, and then distributing the fund to other beneficiaries, where the fund itself is not and never has been any part of the estate of the

deceased, is certainly no part of the administration proper, of the estate. In every view of the case it seems to us the executor acquired no title to this fund by virtue of his letters testamentary, and that an executor's bond is not designed to secure the performance of such a trust, even if the same person is designated executor who is appointed trustee. In People v. Huffman, 182 Ill. 390, the court said :

" Under the statute as it now stands, where a will makes the same person executor and trustee, the executor's bond can not be construed for the faithful performance of the duties belonging to the trustee. A separate bond should be given by the trustee."

But it is argued that even if the executor ought not to have received the money by virtue of his office as executor, yet the proof shows he did in fact do so, and that the bond in suit was given expressly to enable him to receive this fund, and that it is therefore now holden for it. This presents the serious question in the case, whether the executor did any act which made him responsible for this fund as executor, and bound his sureties to liability for it. He said in his petition for letters testamentary that this certificate was an asset of the estate. He gave a bond in a much larger penalty than would have been necessary if he had not then considered it an asset of the estate. On the day letters testamentary were issued, November 28, 1886, he filed an inventory of the personal estate dated four days before, and included therein this certificate. He gave a receipt for the money in his individual capacity and not as executor. The only things he ever did after he received the money tending to show he pretended to be acting concerning it as executor were that the first receipt he took from the widow for interest described him as executor and the sixth as administrator, and he probably drew those receipts. But he could not, by the language of receipts drawn after the bond was given, make the sureties liable for that which was not in fact part of the estate, or in any way enlarge their liability. All other receipts ran to him personally, and they all described the payments as interest on a trust

fund.   His failure to file any reports, and the failure of the court and parties in interest to require reports from him, indicate the trust fund was not considered a part of the estate.   The inventory shows what other personal assets he received, the appraisers valued them, and the widow filed her relinquishment and selection, and elected to take them all upon her widow's award; and attached to that paper was her receipt for every article, dated December 20, 1886. This put out of his hands everything except the certificate, and it does not appear that any further action was ever taken in that estate.   We are of opinion that the language of the petition for letters, the inventory and the two receipts, are not conclusive upon the sureties that he received and held this money as executor, and therefore they are not bound.

But if Petrie received this money as executor, or under such circumstances that his bond is liable therefor, there is another reason why the persons who bring this suit should not be permitted to recover.   We will assume that as defendants did not traverse the allegations of the declaration in the first breach assigned—that Petrie wasted this fund and converted and disposed of it to his own use, they have thereby admitted that averment.   But the trust has not lapsed because the trustee has died, nor because he converted the fund to his own use, if it can be recovered.   Even if Petrie improperly received this money as executor, that fact can not defeat the trust.   The period of distribution has not yet arrived.   The widow is still alive, and the youngest child is not yet twenty years old.   The time has not come when the beneficiaries suing here are entitled to receive the fund.   If plaintiffs are permitted to recover here, they thereby defeat the purpose of the testator in establishing the trust.   A court of equity has power to appoint a successor in trust.   He would then be entitled to receive the fund, and upon receiving it he would be bound to perform the unexecuted duties imposed upon the trustee by the will.   If, by reason of the special facts of this case, this bond is liable for the fund, he would become entitled to sue

for it and collect the money. Even if the executor, by his acts, made himself accountable as such for the fund, and even if this bond is liable therefor, we fail to see how suit can be maintained upon this bond for the fund until it is brought for the use of some person who is entitled to receive it. In such a case, perhaps, an administrator *de bonis non*, with the will annexed, when appointed and qualified, would be entitled to receive the fund. The widow and children certainly have no present right to its possession. They have not been appointed to receive it now, and have given no obligation binding them to execute the trust. This is not one of those cases where it is unnecessary the names and interest of the persons for whose use the suit is brought should appear in the record. They are the real plaintiffs, and they are the parties who appeal, as recited in the appeal bond herein. We are aware that defendants filed no plea questioning the right of plaintiffs to maintain a suit if a liability existed. But we can not think that, because of the silence of defendants on this point, the courts should permit the widow and children to defeat the trust and take a fund which the testator did not intend they should now receive. The title the widow and children here assert is under the will of B. F. Brooks, and it shows they are not yet entitled to take the fund. The declaration did not state a cause of action in the present plaintiffs.

We are not unmindful that the widow was entitled to receive the interest, but we think it manifest this suit was not brought to recover interest for the widow, and that no basis is found in the proof for determining how much interest was due her. So long as the trustee may have invested the fund, as required by the directions of the testator, he would only be liable for such interest as he was able to get by the exercise of due diligence. The direction to keep the money at interest at eight per cent per annum did not bind the trustee if he could not obtain that rate, nor after the legal rate of interest had been lowered by statute. While the failure of the defendants to plead to the assignment that Petrie wasted said money and converted it to his own use,

confesses the charge, yet the declaration did not state when Petrie converted the money to his own use, and therefore that is not admitted. Petrie paid the widow the interest in full to February 18, 1892, and paid her various sums thereafter. No proof was made when Petrie converted this fund to his own use, nor how much interest he had been able to collect up to that time, and there was no computation to show how much interest the widow was entitled to recover. The fourth plea only averred Petrie had paid the widow all interest he had received, and issue was joined upon that plea. There was no proof he had received more interest than he had paid to the widow. There was no averment in declaration or replication seeking to charge Petrie with interest he had not collected, or with liability to the widow for interest upon the fund after he converted it to his own use. If the court below thought the widow entitled to recover interest in this suit, there was no basis shown by which it could have determined what sum to award her. Propositions of law were presented by plaintiffs, but none upon the subject of interest due the widow. The suit was not brought for the use of the widow alone, but for the use of the widow and children and guardian of the minor children. If this bond is liable for the fund, still no error appears in not awarding the widow interest in this suit.

It is argued the failure of the executor to file a report entitled plaintiffs to nominal damages, and the judgment should therefore be reversed and the cause remanded. This point is purely technical, for, if we are correct in concluding this fund was not part of the estate to be accounted for to the County Court, then the papers filed there by the executor showed he had turned over to the widow all the personal property of the estate; and the only report he could have made would have been to formally charge himself with said property and credit himself for its delivery to the widow; that is, to state in the form of a report only facts and figures already appearing in papers filed by the executor in 1886. Plaintiffs tendered various propositions

of law, but none upon the subject of the right to recover nominal damages because of the failure to file a report. They moved for a new trial, and filed the points relied upon therefor, and did not assign failure to award nominal damages as one of them. They are restricted to the reasons they then assigned.

Besides, courts will not award a new trial merely to enable a party to recover nominal damages. Comstock v. Brosseau, 65 Ill. 39; Thisler v. Hopkins, 85 Ill. App. 207; Hyatt v. Wood, 3 Johns., 238.

The judgment is affirmed.