Jessie R. Thren, Appellee, v. Sarah J. Ames, Appellant.

Gen. No. 5,115.

DAMAGES—*when new trial will not be awarded.* A new trial will not be awarded to permit the recovery of merely nominal damages.

Trespass on the case. Appeal from the Circuit Court of Winnebago county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed June 10, 1909. Rehearing denied July 15, 1909.

JAMES R. JAFFRAY and WILLIAM L. PIERCE, for appellant.

H. S. HICKS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Mrs. Thren, the appellee, and Mrs. Ames, the appellant, exchanged real estate properties at an agreed valuation of $5,000 for each, and pursuant thereto Mrs. Ames deeded to Mrs. Thren, under date of January 8, 1903, lot 13 in block 37, in the Gregory addition to the city of Rockford, on the east side of Rock river, excepting the north ten feet thereof, reserved for an alley. On September 7, 1903, Mrs. Thren began this suit against Mrs. Ames, to recover damages for a deceit alleged to have been practiced upon her in the making of said trade. The suit has been tried five times in the Circuit Court, and this is the third time it has been before this court upon appeal, our former reviews of the case being reported under the title of Ames v. Thren, in 125 Ill. App. 312; and 136 Ill. App. 568. The present appeal is from a judgment in favor of Mrs. Thren for $600.

The alleged deceit is in respect to two matters. The first relates to a conversation when Mrs. Ames was showing Mrs. Thren this Rockford property. Mrs.

Thren testified that Mrs. Ames then pointed to a fence standing three or four feet east of the dwelling house upon said lot (which house faced south) and said, "There is the lot line." Mrs. Heimert, a tenant, was present, and testified that Mrs. Ames then said to Mrs. Thren, "There is the line fence," pointing to the fence between the property of Mrs. Ames and the property next east, owned by the Ekeberg family. It was proven that at a former trial, Mrs. Heimert testified that Mrs. Ames said to Mrs. Thren, "There is your line." Mrs. Ames denied that she made this statement, but testified that if she had been asked where the line was, she would have said that that fence was the line, as she believed it so to be. The other alleged deceit consisted in the failure to disclose this fact: Some time before this, the city surveyor had driven an iron pin in the street, nearly three feet west of this fence, as the line between said lot 13 and the lot next east thereof belonging to the Ekebergs, which was lot 14. If this pin was at the true line, then the eaves of the dwelling house on Mrs. Ames' lot projected over on to lot 14, and some two feet of a barn in the rear stood over on lot 14. When Mrs. Thren viewed the premises before buying, there was snow and ice in the street, and this iron pin was out of sight. Mrs. Ames knew of its existence, but did not call the attention of Mrs. Thren to it. This survey had not been made at the instance or with the co-operation of Mrs. Ames. It was an ex parte survey, and not binding upon her. Mrs. Thren introduced evidence of conversations by Mrs. Ames with others, before this exchange of properties, which tended to show that Mrs. Ames supposed that the iron pin was at the true line, and that she did not desire to disclose that fact. Mrs. Ames testified denying these conversations. Mrs. Ames also proved that, prior to the exchange of properties, she talked with Mrs. Ekeberg, who was living on lot 14, having a homestead and dower right therein, and that Mrs. Ekeberg told her that there would never be any trouble with

her family about the line; and that she talked with a real estate dealer, who assured her that there was nothing in the report that her line fence was not on the true line. It will therefore be seen that if the real boundary between the two lots is on the line where the iron pin is driven, then there was evidence which would warrant the jury in finding either that Mrs. Ames had or had not been guilty of deceit.

The fence in question was built in 1888. The part nearest to the street on the south was built by Mr. Ekeberg, now deceased, the husband of Mrs. Ekeberg, and the then owner of the east lot, or by Mrs. Ekeberg's father under her direction. While the proof on that subject is not as clear as in former records before this court, yet it sufficiently appears that that fence was built upon the same line as an old fence previously dividing the properties. For many years back, that fence has been treated by the owners of lot 13 and the owners of lot 14 as being the dividing line between the lots. The owners of lot 13, including both Mrs. Ames and her predecessor in title, have held and claimed to own to that fence. No suit has ever been brought to dispossess the owner of lot 13 of the land immediately west of that fence. Mrs. Ames delivered to Mrs. Thren possession to that fence, and she has ever since retained that possession. It appears that some time within a year preceding the last trial, the fence has been taken down, but there is no proof that the possession of Mrs. Thren has thereby been changed, nor anything to show that she does not yet possess the premises up to the line of that fence. She therefore obtained possession of all that she supposed she was buying, and she has ever since retained, and still has, that possession. As against Mrs. Ames, she is not at liberty to surrender that possession to the Ekebergs, if they should demand it of her. Both the original and amended declarations allege, as the only damage which Mrs. Thren has suffered by this alleged deceit, that she has been cheated of her money and property, and deprived of the use

thereof for a long period of time, and has been put to much trouble and expense in trying to recover the same. The proof shows that she has not been deprived of the use of any property, and she does not show that she has been put to any trouble and expense in trying to recover the same. That allegation, of course, must be held to refer to the condition existing when she commenced this suit, and not to the money she has spent in this suit. She called several witnesses to prove her damages. The questions upon that subject were objected to by Mrs. Ames, and the objections were overruled, and exceptions were duly preserved. These expert witnesses were first asked their opinion as to the fair market value of lot 13 at the date of the deed, assuming that the fence was the east line of the lot. After each of these witnesses had fixed a valuation upon the lot if the fence was its east line, they were then asked to give its fair market value at the date of the deed, if the line of the lot in fact ran along the east wall of the house, underneath the eaves, so that the eaves projected over the lot line, and if the lot line ran through the outbuildings on the rear of the lot, and they gave their estimates of that value, the difference in value being generally estimated by them at about $1,000. These questions entirely ignored the fact that Mrs. Thren received from Mrs. Ames and is still in possession clear to the fence. She has at least a possessory title clear to the fence, and there is nothing to show that she will ever be disturbed in her possession of the three feet, more or less, here in question. If the fact should turn out to be that the original fence, upon the line where the present fence stood when this suit was begun, was placed there by an agreement between the owner of lot 14 and the owner of lot 13, that that should be treated as the true line between those lots, then the Ekebergs could not recover possession of said three feet from Mrs. Thren, and she would have a perfect title thereto; though that title would not be of record, if the pin is at the theoret-

ically true line between the lots. In that event the statement by Mrs. Ames, if she made it, that that fence was the lot line, would not be false. The proof does not show that Mrs. Thren has sustained any actual damage by reason of the alleged deceit. It is not shown that the property was worth any less when she bought it because of the possibility that the Ekebergs might seek to recover said three feet of land, and because of the possibility that they might succeed in such litigation if they should institute it, or because of the possibility that it might turn out that, though she had a perfect possessory title to the fence, yet her paper title of record would begin three feet further west. Under all these circumstances it is clear to us that this record does not disclose that she has been injured in the sum of $600 or in any other sum. If she is never ejected from this three feet, and is never sued for possession thereof, she will retain all that she supposed she was buying, and will have the amount of the judgment besides, if the judgment stands and is paid; whereas the only witnesses upon whose testimony the judgment is founded based their estimates upon the supposition that she is to lose three feet from the east side of the property.

A new trial will not be granted to permit the recovery of merely nominal damages. Hyatt v. Wood, 3 Johns. 239; Johnson v. Weedman, 4 Scam. 495; Comstock v. Brosseau, 65 Ill. 39; Thisler v. Hopkins, 85 Ill. App. 207; People v. Petrie, 94 Ill. App. 652, and the same case 191 Ill. 497. Upon the proofs in the present record, we are of opinion that not more than nominal damages could be recovered.

We conclude that we ought not to permit appellee to further experiment with the case. The judgment is therefore reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that appellee received from appellant all

that she supposed she was purchasing, and that she has ever since retained possession thereof, and that there is nothing to show that she will ever be disturbed in that possession, and that there is no proof that she is entitled to recover more than nominal damages, if she has a cause of action.